KANE *vs.* THE PEOPLE.

Where, by an act of incorporation of a *turnpike road and bridge compa-ny*, it was made the duty of the president and directors to keep the road in repair, and the neglect to do so was declared a *misdemeanor* in the president and *individual directors* for the time being, *it was held*, that an *individual director* might be indicted for such neglect, either *separately* or *jointly* with his co-directors, and on conviction, might be punished *separately* although the board or directors consisted of *seven* members, and the concurrence of a *majority* was necessary to the doing of a corporate act.

When the road is out of repair, *prima facie*, all the directors are liable; those, however, who have done their duty, and were prevented from complying with the act by the omission of others to do their duty, may shew the facts of the case in exoneration of themselves.

Under such an act the offence is set forth with sufficient certainty by reciting the substance of the statute imposing the duty, averring the company to be in existence as a body corporate, and that they have erected gates and exacted toll, without formally alleging the road to have been made and completed, that the defendant was a director, that he had notice of the road being out of repair, and had been guilty of a neglect of duty in the premises.

Although *two statutes* are set forth in the indictment, it is not necessary to allege the offence to have been committed *contra formam statutorum*, where it is wholly created by one of the statutes, and the second merely makes some alterations in the first, without affecting the offence.

A count in an indictment charging a party with neglect of duty as a director of a *road bridge company*, after the company had been formed into two distinct companies, viz. a *road* and *bridge* company, is bad; but if there be also a count charging him as a director of the *road company*, and there be a general verdict of guilty, judgment may be rendered upon the last count; the law in *criminal* cases varying from *civil* cases in this particular.

It cannot be objected *in error*, that two or more offences of the same nature, upon which the same or a similar judgment may be given, are contained in different counts of the same indictment; nor can such objection be urged either on *demurrer* or *in arrest*.

In cases of *felony*, where two or more distinct and separate offences are contained in the same indictment, it may be quashed, or the prosecutor compelled to elect upon which charge he will proceed; but such election will not be required to be made where several counts are inserted in an indictment solely for the purpose of meeting the evidence as it may transpire on the trial, the charges being substantially for the same offence. In cases of *misdemeanor*, however, punishable by fine and imprisonment, the prosecutor may join several distinct offences in the same indictment, and try them at the same time.

ALBANY,
Dec. 1831.

Kane
v.
The People.

The fact that a corporation, incorporated as a *road and bridge company*, was by a subsequent act of the legislature permitted to form itself into two distinct companies, one designated as a *turnpike road company* and the other as a *bridge company*, WAS HELD not to exonerate the officers of the road company from the penalties imposed by the original act, it being manifest that the legislature did not intend to releive them from their liabilities.

Nor does an act of the legislature permitting a turnpike road company to *abandon* a part of their road, discharge the directors from a penalty incurred in reference to such part of the road previous to the act authorizing the abandonment.

Where a party convicted of an offence is subject to two distinct and independent punishments, it cannot be alleged for error by the defendant that one only of the punishments to which he was liable is adjudged against him ; the *prosecutor* may complain of such omission, but not the party convicted.

A judgment that a defendant pay a *fine* and an award of process for the recovery thereof, according to the course and practice of the court, is good, although it be not added that the defendant stand committed until the fine be paid ; it is enough if there be an award of process to carry into effect the sentence of the court.

*It seems*, that, where, on conviction, a fine is imposed, either a *levari facias* or *capias ad satisfaciendum* may issue for its collection.

ERROR from the supreme court. The plaintiff in error and two others were tried on an indictment, in which they were charged with neglect in not keeping a turnpike *road in repair* they being directors of an incorporated company to which the road belonged, and the act of incorporation declaring every such neglect a misdemeanor. Kane alone was convicted at the oyer and terminer in Oneida, and sentenced to pay a *fine* of $200. He sued out a writ of error to the supreme court, where the judgment below was *affirmed*, see 3 Wendell, 363, and now brought error to this court.

The indictment stated in the *first count*, that by an act of the legislature, passed 4th April, 1800, a company was incorporated by the name of " The President, Directors and Company of the Mohawk Turnpike and Bridge Company," for the purpose of erecting a bridge across the Mohawk river opposite Schenectady, and making a road from the bridge to Utica ; that the president and directors proceeded to make the road, and did make the same through the town of Deerfield, in the county of Oneida ; that by the provisions of the act, the president and directors were, during the continuance of the act, to keep the road in good repair, and every neglect to keep and

preserve the same in repair was to be deemed a *misdemeanor* in the president and individual directors for the time being ; that in pursuance of the act the president and directors caused gates to be erected and tolls to be collected of persons passing through such gates ; that at the several times, &c. D. B. was *president* of the company, and J. C. Y. and C. *Kane directors* of the same ; that on the 1st January, 1827, a certain part of the turnpike road, to wit, 200 rods in the town of Deerfield, was, &c., and from that day until the finding of the inquisition, to wit, 11th June, 1827, was very ruinous, broken, miry, &c. for want of due reparation, &c. by means whereof the good people, &c. could not travel the same without danger to their lives, and loss of property, to the great damage and common nuisance, &c. ; all of which was alleged to be *against the force and effect of the aforesaid statute,* and against the peace of the people of the state of New-York, and their dignity. The jurors further presented that at all times between the 1st January and the 11th June 1827, the defendants D. B., J. C. Y., and *C. Kane* had *notice* of the premises, and that *the president and directors of the company* during the time between the days last mentioned *did neglect and refuse* to keep and maintain the road in repair, and still neglected to keep the same in repair as they were and still are required to do, to wit, at, &c. *against the statute aforesaid,* and against the peace of the people and their dignity. The *second count,* after setting forth the original act of incorporation, the erection of the gates, and the taking of tolls as specified in the first count, proceeded to allege, that by an act of the legislature, entitled, &c. passed 10th April, 1805, the president and directors of the company were authorized, with the assent of a majority of the stockholders, to divide the stock of the company into two parts, so that one part of the stock should remain with and belong to the stockholders of the said company, thereafter to be denominated " The Mohawk Turnpike Company," and the other part to belong to the stockholders of said company who should be formed into a *new company,* to be denominated " The Mohawk Bridge Company ; " that on the 10th April, 1805, such division of stock was made, whereby the stockholders of " the Mohawk Turnpike Company " became and were, and at, &c. continued

to be a body politic and corporate, denominated "The Mohawk Turnpike Company," and *the president and individual directors of the said last mentioned company*, by force of the act of 1805, and by the division aforesaid, became liable to do and perform the same acts and duties and became subject to the same pains, penalties and liabilities as the president and individual directors of " The Mohawk Turnpike and Bridge Company " were liable and subject to, by virtue of the original act of incorporation; that from and after the division of the stock aforesaid, continually until the filing the inquisition, *The Mohawk Turnpike Company* have kept up and maintained the gates so erected as aforesaid, and have during all the time aforesaid collected tolls, &c. ; that at the several times, &c. D. B. was president, and J. C. Y. and *C. Kane* were directors of *the last mentioned company*, whose duty it was, and is, to keep the road in good order and repair.  The count then charged the road to be *out of repair* on the 1st January, 1817, until, &c., alleged *notice* to the defendants, and averred that *the president and directors of the last mentioned company* neglected to keep the same in repair, as set forth in the first count, concluding *against the statute aforesaid.* By the fifth section of the original act of incorporation, the president and directors are required, during the continuance of the act, to maintain and keep the road in good repair ; "and every neglect to keep and preserve the same road in such repair, shall be taken, judged and deemed a misdemeanor in the president and *individual directors* for the time being of the said Company." The number of directors was fixed at *thirteen*, of whom *seven* were declared a quorum, and by an act passed in 1806, the number of directors of the *turnpike company* was reduced to *seven.* On the trial of the indictment *Kane* alone was convicted, the other two defendants being acquitted, and the oyer and terminer give judgment "that the said C. Kane, for the misdemeanors and offences in said indictment specified, pay to the said people of the state of New-York a fine to the amount of two hundred dollars, and that process for the recovery thereof be, and the same is hereby awarded, according to the course and practice of this court." In March, 1829, after the rendition of the judgment in the oyer and terminer, the legislature permitted the company to abandon that part of their

road, for a neglect in keeping which in repair, the conviction was had.

The case here was argued by

*A. C. Paige*, for the plaintiff in error.

*H. Denio*, district attorney, for the people.

The following points were raised on the part of the plaintiff in error:

1. The indictment is bad, it not being against all the directors, or at least against a majority of them.

2. The conviction of Kane alone was erroneous. The acquittal of the two other defendants necessarily extended to him.

3. If the directors of the Mohawk turnpike company are severally liable to an indictment, then the word *severally* should have been inserted in the indictment, in order to make the offence several to each.

4. There is a misjoinder of offences in the indictment; there being two counts against the defendants below, as directtors of different companies.

5. The judgment is erroneous, it being limited to the infliction of a fine; it should also have directed the road to be put in repair.

6. The indictment should have concluded against the forms of the *statutes*, in the plural number.

7. The indictment being upon a private statute, should have stated specially all the circumstances constituting the offence, and the precise and technical language of the act should have been adopted.

8. There is no allegation in the indictment, that the road was ever made or completed.

9. It is not alleged in the indictment, that the defendants below neglected to keep the road in repair.

10. The penalties prescribed in the original act incorporating the Mohawk turnpike and bridge company, are not binding upon the Mohawk turnpike company.

11. The judgment must be reversed, inasmuch as the legislature by an act passed in 1829, have permitted the Mohawk turnpike company to abandon that part of their road for the non-repair of which the indictment was found.

12. The judgment is erroneous, being upon both the counts in the indictment.

13. The judgment should have been that the defendant be committed to jail.

The following opinions were delivered:

By the CHANCELLOR. The plaintiff in error was indicted as one of the directors of the Mohawk Turnpike Company for neglecting to keep the road of the company *in repair*. By the act of incorporation, the president and directors of the company are required to maintain and keep the road in good repair and every neglect to do so is declared to be a misdemeanor in the president and *individual directors* of the company for the time being. Laws of 1800, ch. 105, p. 215. It does not appear what evidence was introduced upon the trial, but we must presume that the public prosecutor proved every thing necessary to show the defendant guilty of the charge contained in the indictment. The act of the 6th April, 1806, reduced the number of directors to seven, four of whom were necessary to do a corporate act; but it does not necessarily follow that four must have been guilty of a neglect of duty in making the repairs. The refusal of one to concur in a resolution directing the repairs, or in making the necessary appropriation for that purpose, may have been the cause of the road continuing so long out of repair, although all the other directors then in office were entirely innocent. Sickness or necessary absence might have prevented a part of the directors from acting. It is no excuse to one who has been guilty of a public offence that others are equally guilty. This is not like the cases of conspiracy and *riot* alluded to on the argument, where the concurrence of a certain number is necessary to constitute the offence. If only three are charged in the indictment as having been engaged in a riot, and one or more is acquitted, none are guilty of that particular offence, because it appears that the

act, which was done by a less number, could not in law have been a riot; but if the concurrence of four officers is necessary to discharge a public duty, three of them may be acquitted on the ground that they endeavored to discharge their duty, but could not obtain the assent of the requisite number, in consequence of the neglect of the fourth to discharge his duty. In such cases, the neglect of each, who refuses to do what has been legally imposed upon him to join in doing, is an offence for which he may be individually indicted and punished.

The proceeding by indictment at common law against a parish, or the inhabitants of a particular district, who were in their collective capacity bound to repair the highway, does not appear to be analogous to this case. The allegation in the indictment in those cases was, that the particular district was bound to repair, but the allegation was negatived if it turned out in evidence that a larger or different district was chargeable. Upon a conviction also at common law, the defendants were not only fined for their past neglect, but the court proceeded by attachment or distress to compel them to make the repairs. The expense was to be borne by the whole district, which was chargeable, in the nature of a tax; it was therefore necessary and proper that the indictment and judgment should be against every part of the district, whose inhabitants were to be taxed for those repairs. It is said that the rule was the same when several persons were chargeable by reason of tenure. I have not been able to find any adjudged case supporting such doctrine, but there are cases which show that where the owner of a manor or other estate is bound to repair by reason of tenure, if he disposes of the estate to divers individuals in parcels, any one or more of the new owners may be indicted and convicted, and may even be compelled to make the whole repairs, without prejudice, however, to the right to claim contribution against the others who are chargeable. Case of Loddon Bridge, W. Jones' R. 273. *Queen* v. *Duchess of Buccleugh*, 1 Salk. R. 358. In the case before us, the statute has declared that a neglect of duty by those who were chargeable with the repairs for the time being, should be deemed a misdemeanor in them individually.

They are, therefore, individually liable to be indicted and punished for their neglect; but this penal statute can never be construed to subject them individually to the expense of repairing the road, when perhaps they may be no longer in office. Where several are guilty of a violation or neglect of official duty, although it be a case in which several did or ought to have joined in the act, they may be indicted and convicted, either jointly or separately; but the punishment in every such case must be inflicted upon each severally. Thus, in *The King* v. *Holland*, 5 T. R. 607, where the defendant was proceeded against by information, for a neglect of official duty as one of the counsellors of the presidency of Madras, it appeared that a majority of the board were necessary to do an official act, and the very objection now urged was taken, but the court of king's bench would not even listen to an argument of the question. They held that each individual member of the board who did not do what in him lay to discharge his public duty, contracted by his negligence individual guilt, and might be proceeded against separately. Here it was the duty of the president and directors, for the time being, to know the state of their road, and it was the duty of each to do all that in him lay to keep it in repair. *Prima facie*, every director was guilty of a neglect of duty in not joining with his associates in making the necessary provision for the repair of the turnpike, and if any one has done his duty, but has been unable to effect the object through the neglect or misconduct of others, he must show that fact on his trial.

If it was not necessary to join a majority of directors in the indictment in the first instance, it necessarily follows that the acquittal of two, out of the three who were indicted, is no defence to the third. The two who were acquitted may not have been directors, or they may have proved that they did their duty, but could not induce the plaintiff in error and others to concur with them in providing for the necessary repairs.

The third objection is wholly untenable, especially after the acquittal of the other two defendants; and I believe it was abandoned on the argument.

The fourth objection is for a misjoinder of counts in the indictment. If there ever was any thing in this objection, it

should have been addressed to the discretion of the court below before conviction. In cases of felony where two or more distinct and separate offences are contained in the same indictment, the court, in its discretion, may quash the indictment, or compel the prosecutor to elect upon which charge he will proceed; but in point of law, it is no objection that two or more offences of the same nature, and upon which the same or a similar judgment may be given, are contained in different counts of the same indictment. It therefore forms no ground of a motion in arrest of judgment; neither can it be objected by way of demurrer, or on a writ of error. *Rex.* v. *Young,* 2 Peake's N. P. Rep. 228, n. It is every day's practice to charge a felony in different ways in several counts, for the purpose of meeting the evidence as it may come out upon the trial; each of the counts on the face of the indictment purports to be for a distinct and separate offence, and the jury very frequently find a general verdict on all the counts, although only one offence is proved; but no one ever supposed that formed a ground for arresting the judgment. If the different counts are inserted in good faith, for the purpose of meeting a single charge, the court will not even compel the prosecutor to elect; and in the case of mere misdemeanors, which are only punishable by fine or imprisonment, the prosecutor is permitted to join and try several distinct offences in the same indictment.

The objection that the defendant was fined only, and that he was not also compelled to repair the road, is one which cannot be urged by the plaintiff in error, even if a judgment to repair could have been given on this conviction. The defendant may, on a writ of error, object that the punishment inflicted upon him is too great in its extent, or that it is different in form from what the law has prescribed; but where a party is subject to two distinct and independent punishments for the same offence, if one of them is inflicted upon him by the sentence of the court, he cannot object that the court has not gone further and inflicted the other penalty also. The authorities cited to this point on the argument were all cases in which the *prosecutor* objected that the judgment had not gone far enough; and if this judgment is reversed on that ground, we must still go on and sentence the plaintiff in error to repair

the road, in addition to the fine already inflicted. But for·the reasons which I have before stated in disposing of the complainant's first point, I am satisfied the court could not legally have compelled the defendant to put the road in repair. There is no evidence on the record that the defendant was one of the directors at the time of the trial, as by the charter they are chosen annually. The directors, for the time being, are charged with the repair of the road, and those only ; and if they pay for those repairs out of their private resources, they then have the power of remunerating themselves out of the corporate funds.

The sixth objection is, that the indictment should have concluded *contra formam statutorem*, in the plural. Such a conclusion is sometimes necessary where one statute is in relation to another, as where one creates the offence and another fixes the penalty ; but where the statute creating the offence is only amended or regulated, or altered in parts thereof which do not relate to the offence or to the punishment thereof, a conclusion in the singular is proper. Here the original act alone relates to the offence, and the common law prescribes the punishment of a single misdemeanor. The act of 1805 merely changes the name of the corporation, and makes no alteration, either express or implied, as to this offence. The conclusion against the form of the statute in the *singular* was therefore correct.

The seventh and eighth objections are equally untenable. The indictment recites the substance of the statute, which shows it was the duty of the directors to keep the road in repair. It charges that they had notice it was out of order, were requested to repair it, and that they neglected to do so. This appears to be a sufficient averment that they all neglected to do their duty ; and the jury have found that allegation true, so far as related to the plaintiff in error.

But it is said that the penalties imposed upon the President and Directors of the Mohawk *Turnpike and Bridge* Company by the original act of incorporation, are not binding upon·the officers of the Mohawk *Turnpike Company.* By a reference to the act of 1805, however, it is evident that the legislature intended to continue the old company so far as related to the

road, with all the powers and privileges granted, and subject to all the penalties and restrictions imposed by the act of incorporation. The name only of the company is changed, and it is relieved from the charge of building and keeping the bridge in repair for the future. The bridge company is a new corporation, and we must look to the last act for the powers, privileges and restrictions which properly belong to that company; but even as to that, it will be seen that the legislature did not intend to repeal the provision which subjected the president and directors to individual liability for a neglect to repair, as all the limitations, restrictions and penalties imposed by the original act of incorporation are expressly extended to the new corporation, so far as respects their bridge. I am therefore, satisfied that it would be doing violence to the intention of the legislature to construe this last act as a repeal of any of the restrictions or penalties imposed by the act of April, 1800, upon the company in respect to the road.

ALBANY,
Dec. 1831.

Kane
v.
The People.

The act of March, 1829, authorizing the turnpike company to abandon that part of the road which is embraced in this indictment, cannot invalidate or authorize the reversal of a judgment which was rendered the previous year; and if I am correct in supposing that this proceeding is merely to punish the directors for a previous neglect of their official duty, the act of 1829 would not have prevented a subsequent prosecution for the offence charged in this indictment, which was committed in 1827.

The objection that the judgment is erroneous, because it is against Kane upon both counts of the indictment, might have been sustained, if a distinct punishment had been inflicted for the offence charged in each; but even in that case, the judgment could be reversed only as the first count. That count is undoubtedly defective, because it appears by the finding of the jury, and by the statutes of April, 1805, and of April, 1807, that no such company as that described in the first count was in existence in 1827. It is, however, well settled that in criminal cases where there is a general verdict and judgment on an indictment containing several counts, it is no objection to the validity of the judgment that one or more of the counts is defective, provided there is any

count in the indictment on which such judgment could have been legally rendered. *The People* v. *Curling*, 1 Johns. R. 320. *The U. States* v. *Furlong and others*, 5 Wheat. R. 184. In such cases it is presumed that the court, in fixing the amount of the fine, or in awarding punishment, were governed on by those facts, which were well charged in the indictment, for which only the punishment could be legally inflicted; and Lord Mansfield regretted that this principle had not been extended to civil suits also, where general damages are awarded by the verdict of a jury. Dougl. R. 703.

It is said that the indictment does not aver that it was the duty of the president and all of the directors to keep the road in repair. In an indictment at common law against a parish, which *prima facie* was bound to repair, the indictment merely stated that the road was ruinous, and that such parish ought to repair, But where it was attempted to charge only a particular part of a parish or an individual, which was against common right, it was necessary to show by the indictment how the defendants were liable to repair. In this case the indictment recites the statute which makes it the duty of the president and all the directors, for the time being, to keep the road in repair, and it then charges that the defendant was one of the directors of the company. Certainly no further averment could be necessary to show whose duty it was to repair the road, and how the defendant was liable under the statute.

There is no allegation in the indictment that Kane, Boyd and Yates were the only directors of the company; and there is nothing from which it can be inferred that there was not a legal board competent to transact the corporate business of the company. It was not necessary to insert a formal averment in the indictment that the road was made and completed. The charter was to be void if the road was not completed within eight years; but the company had a right to erect gates and to exact toll when a part only was completed. It is averred in the indictment that the company still continue to be a body corporate, and that they had erected gates and exacted toll upon the road. The legal inference therefore is, that all the requirements of the statute had been complied

with to authorize the erection of gates, and to continue the existence of the company down to the time of the finding of the indictment.

The last objection is, that the judgment is erroneous, because it does not direct that the defendant, who was there present in court, should be immediately committed to jail until the fine was paid. In proceedings in civil suits at common law against a defendant in an action of tort, in addition to the usual judgment for the debt or damages awarded to the plaintiff, there was a judgment that the defendant be taken until he paid a fine to the king; and in cases of misdemeanor, where a verdict might be given against him in his absence, a capias was awarded to bring him in to receive judgment, or if he was in court, he might be committed to prison until the fine which had been imposed upon him for the offence was paid. It seems now to be well settled, that for the collection of the fine imposed upon the defendant upon such conviction, the people have the right to proceed against the property of the defendant by a *levari facias*, as well as against the body ; and perhaps they may proceed against both at the same time. All that is necessary to insert in the judgment in relation to the execution is the award of the proper process to carry into effect the sentence of the court. If it was a matter of course to commit the party to prison immediately, to remain in execution until the fine was paid, such would be the effect of awarding process for the recovery of the fine, *according to the course and practice of the court;* and upon this judgment a *capias ad satisfaciendum pro fine* may properly issue to the sheriff, to take the defendant, and to detain him in jail until the fine is paid. And if, as I think was the case, the public prosecutor might at the same time proceed against the property of the defendant, to collect the fine by *levari facias*, this judgment is sufficient to authorize the issuing of that execution also.

I think there was no error in the judgment of the court below, and that the judgment of the supreme court, affirming that judgment, should also be affirmed here. See *Judson* v. *The State*, 1 Alabama Rep. 150.

By Mr. Senator SEWARD. The first point made by the counsel for the plaintiff in error is, that the indictment was bad, not

being against all the directors, or at least, against a majority of them. It is contended that the president and directors are jointly liable, and should have been jointly indicted. The offence is created and defined by the act of April 4th, 1806. 2 R. L. of 1801. By the 5th section of that act it is declared to be the duty of the president and directors, " during the continuance of the act, to maintain and keep the road in good repair ; and every neglect to keep and preserve the same road in such repair, shall be taken, judged and deemed a misdemeanor in the president and individual directors for the time being, of such company." The true, as well as obvious construction of the act, I think, is this : that in order to secure the performance of the duty enjoined upon the corporation, the persons who may hold the offices of president and directors are made *individually* liable for the neglect of the corporation. The use of the words *individual directors* can have no other sensible explanation. At common law, *torts* are several, and not joint. Several may be indicted together, but the judgment must be *several.* I have no doubt, therefore, that the indictment lies against any one, or more, or all of the directors, but the judgment must be several. It was urged by the counsel for the plaintiff in error, that there is an analogy between the offence under consideration and that of neglect by a parish to keep roads in repair in England ; that in the latter case the defendants arrested might give in evidence that it did not belong to them to keep the road in repair, and that they had used their exertions to cause the road to be repaired ; and he contended that the defendants indicted under the statute for the neglect of the corporation to keep their road in repair, ought to have the right to make the same defence, and therefore the indictment should have been against all, or a majority of the directors. I am at a loss to discover how the defendants below were deprived of the benefit of this defence by being severally indicted, or by less than a majority of the directors being included in the indictment. If less than a majority are indicted, they may avail themselves of the same defence as if all were indicted ; and so far as concerns the right of the defendants convicted to be indemnified out of the funds of the company, it cannot be affected by the fact that others were or

were not included in the indictment. But the offence created by the act is so defined, as to forbid the analogy upon which the whole argument of the counsel rests. The principle contended for by him is, that where a burthen is laid upon a body of men, *all* must be indicted for the offence of neglect to discharge it. The act imposes, indeed, the duty of keeping the road in repair, upon the corporation, but the performance of that duty is secured by making the president and directors *individually* responsible.

The second point urged in behalf of the plaintiff in error is, that the conviction of Kane alone was erroneous, and that the acquittal of the others extended to him. This point is a consequence of the first, and falls with it.

It was urged on behalf of the plaintiff in error, that there is a misjoinder of offences in the indictment, there being two counts against the defendants below as directors of different companies. The defendants are indicted as individuals. There is no rule which forbids uniting several counts, varying in form, for the same offence. The counts in the indictment are, as they are required to be, technically, for different offences, but evidently relate to the same transaction. 1 Chitty's Cr. L. 205.

It was also urged as a ground for reversing the judgment, that it is not alleged in the indictment that the defendants below neglected to keep the road in repair. It is a general rule that all indictments founded upon statutes must state all the circumstances which constitute the offence created by the act, so as to bring the defendant precisely within it. Nothing more is required than to state the offence according to the definition contained in the statute. 1 Chitty's Cr. L. 231. This is done in the indictment in this case. Besides, the fact of the road having been repaired, was matter of defence for the defendant to set up, but clearly not necessary to be traversed by the indictment.

Another point urged on behalf of the plaintiff in error was, that the penalties prescribed in the original act incorporating the Mohawk Turnpike and Bridge Company are not binding upon the Mohawk Turnpike Company. A very cursory reading of the act of 1805 is sufficient to show that the corpora-

tion created by the act of 1801 remains, with all its privileges, rights, powers, responsibilities and liabilities, except as they are modified by the act of 1805, which provided for dividing the stock and changing the name of the corporation. The act of 1805 in no respect repeals the penalties prescribed by the act of 1800.

The counsel for the plaintiff in error also contended, that the judgment of the supreme court is erroneous, upon the ground of its being rendered upon both counts. There is a difference in this respect betwen civil and criminal cases ; in criminal cases, a general judgment against the defendant is good, if there be one good count, and the reason is that in civil cases the jury find entire damages, and the court cannot apportion ; but in criminal cases the court themselves regulate the severity of the sentence, and can do so according to their discretion upon those points of the indictment which are supported. 1 Chitty's Cr. L. 205. 2 Ld. Raym. 887.

It was urged also that there is no averment in the indictment that the road was ever made and completed. The indictment most certainly bring the defendants within the liabilities of the act ; and it is true that the act of 1800 declares that the company shall be disolved, if the road be not completed within eight years. But it most assuredly is not necessary to negative every contingency, on the happening of which, by proviso in the act, the company might be dissolved. It is enough that the indictment shows that the company incorporated had been organized and gone into operation, in pursuance of the act, and that the defendants were directors, had assumed the responsibilities, and incurred the penalties prescribed by the act.

The last point made by the counsel for the plaintiff in error was, that the judgment should have been that the defendant be committed to jail. This error, if it were such, and if it lay with the plaintiff in error to urge it, most certainly would be cured by the statute of jeofails. " No indictment shall be deemed invalid, nor shall the trial, judgment, or other proceedings thereof be affected by reason of any other defect or imperfection in matters of form, *which shall not tend to the prejudice of the defendant.*" 2 R. S. 728.

On this brief review of the whole case, I am of opinion that the judgment of the supreme court ought to be affirmed.

The court being unanimously of the opinion that the judgment of the supreme court ought to be affirmed, it was accordingly *affirmed*.