DUTCHESS OYER AND TERMINER.   September, 1857.   Before *Emott*, Justice of the Supreme Court, and the Justices of the Sessions.

## THE PEOPLE *v.* THOMAS GILKINSON.

It is no objection to an indictment for selling spirituous liquors without license, to be drank on the premises of the person selling, against the provisions of the act of April 16, 1857, that the act is charged to have been done "without having obtained a license therefor as a tavern keeper, *or* without being in any way authorized to sell the same as aforesaid."

The use of "or," instead of "and," is fatal in an indictment only where it renders the statement of the offence uncertain.

If one count in an indictment be good, it will sustain a judgment, though the other counts be defective.

Where, in an indictment for selling liquors without license, the acts were charged to have been committed "on the first day of August, 1857, and on divers other days and times between that day and the day of finding the indictment, to wit: the first day of July, 1857," and the count was demurred to on the ground that the offence was thus alleged to have been committed after the finding of the indictment, it was held that all the *continuando* might be rejected, and the demurrer was overruled.

Form of an indictment for selling spirituous liquors without license, against the provisions of the act of April 16, 1857.

The sale of liquors, by an unlicensed person, is an indictable offence under the act of 1857, the punishment of which, as a misdemeanor, is fixed by the statute at three months' imprisonment in the penitentiary, work house, or jail, and a fine of one hundred dollars. No discretion, as to the extent of punishment, is left to the court, as in other misdemeanors.

The defendant was indicted for a misdemeanor in selling spirituous liquors without license, in violation of the act of April 16, 1857.

THE indictment was as follows:

*County of Dutchess, ss:*

The Jurors of the People of the State of New York, in and for the body of the county of Dutchess, upon their oaths and affirmations, present:

That Thomas Gilkinson, late of the city of Poughkeepsie, in the county of Dutchess aforesaid, on the 12th day of Sep-

The People *v.* Gilkinson.

tember, 1857, at the city of Poughkeepsie, county aforesaid, sold by retail to divers citizens of this State, and to divers persons to the jurors aforesaid unknown, and did deliver, in pursuance of such sale, to the said divers citizens and the said divers persons to the jurors aforesaid unknown, strong, intoxicating and spirituous liquors and wines, to wit: one gill of brandy, one gill of rum, one gill of gin, one gill of whiskey, one gill of cordial, one gill of bitters, one gill of wine, one gill of ale, to be drank in the house, store, shop and grocery of the said Gilkinson, at the city of Poughkeepsie aforesaid, without having obtained a license therefor as a tavern keeper, or without being in any way authorized to sell the same as aforesaid, contrary to the statute in such case made and provided, and against the peace of the people of the State of New York, their laws and dignity.

And the jurors aforesaid, upon their oaths and affirmations aforesaid, do further present: That the said Thomas Gilkinson, late of the city of Poughkeepsie, in said county of Dutchess and State of New York, at the said city of Poughkeepsie, on the 1st day of August, in the year one thousand eight hundred and fifty-seven, and on divers other days and times between that day and the day of the finding of this indictment, to wit: the 1st day of July, 1857, did sell by retail to divers citizens of this State, and to divers persons to the jurors aforesaid unknown, and did then and there deliver, in pursuance of such sale to the said divers citizens, and the said divers persons to the jurors aforesaid unknown, strong and spirituous liquors and wines, to wit: one gill of brandy, one gill of rum, one gill of gin, one gill of whiskey, one gill of cordial, one gill of bitters, one gill of wine, one gill of ale, to be drank in the house, store, shop or grocery of the said Thomas Gilkinson, in the city of Poughkeepsie aforesaid, without having obtained a license therefor as a tavern keeper, and without being in any way authorized, against the form of the statute in such case made and provided, and against the peace of the people of the State of New York, their laws and dignity.

C. WHEATON, *Acting District Attorney.*

The defendant interposed the following demurrer :

DUTCHESS OYER AND TERMINER.

Thomas Gilkinson }
    *adsm.* }
  The People. }

And the said Thomas Gilkinson, by L. B. Sackett, his attorney, comes into court here and defends the wrong and injury, and saith that the said indictment, and the matters therein stated and set forth, are not sufficient in law, and that he, the said Thomas Gilkinson, is not bound by the law of the land to answer the same; and this he is ready to verify.

Therefore, for want of a sufficient indictment in this behalf, the said Thomas Gilkinson prays judgment, and that by the court here he may be dismissed and discharged from the premises in the said indictment specified.

And the said Thomas Gilkinson shows to the court here the following causes of demurrer to the said indictment, that is to say : the statement of the alleged offence in the first count in said indictment is in the disjunctive form, and not made with sufficient certainty.

And also, for that there is not in all or any of the counts of the said indictment any offence shown or stated by or for the people, to have or maintain a criminal action against the said Gilkinson, inasmuch as the sale of the spirituous and other liquors mentioned and set forth in the said counts, is not a crime or misdemeanor, and is not an indictable offence.

And also, for that it appears by the said indictment that the alleged offences therein charged, and each and every of them, were committed since the finding of the said indictment, and that the presentment of the said Gilkinson was made before the commission of the alleged offences, or either of them. And also that the said indictment is in other respects uncertain, informal and insufficient.

                     L. B. SACKETT, *Attorney for Gilkinson*

*L. B. Sackett* and *John Thompson,* for the defendant.

*C. Wheaton* and *J. F. Barnard,* for the People.

The People v. Gilkinson.

The following opinion was delivered by Emott, Presiding Justice:

There are two counts in this indictment, to each of which a formal or technical objection is taken. The first count charges the sale of liquor by the defendant, to be drank on his premises, "without having obtained a license therefor as a tavern keeper, *or* without being in any way authorized to sell the same as aforesaid." The objection is, that the word "or" vitiates the statement of the offence; that the word "and" should have been used, so as to make the sentence read: "without having obtained a license, &c., *and* without being in any way authorized," &c. The rule as to the effect of a disjunctive is, that where it introduces uncertainty in the statement of an offence, it will be fatal. For instance, if in an indictment like the present it were alleged that the defendant sold rum, *or* gin, *or* brandy, that would leave it entirely uncertain what precise offence he had committed, or in what particular he had violated the law. But here the act of selling liquor to be drank on the premises is charged with all necessary certainty, and in the first branch of the sentence which we have quoted, these sales are alleged to have been made by the prisoner "without having obtained a license therefor according to law." The pleader might have stopped here; all that follows is surplusage. There is no other way in which a man can be legally authorized to sell intoxicating liquor to be drank upon his premises, than by a license to him as a tavern keeper. The addition of the words, "or without being authorized," &c., cannot have any effect upon the indictment; they do not alter the statement of the offence, nor can they mislead the defendant, and it would be pushing nicety in pleading to an extreme, to suffer the insertion of such a superfluous allegation to defeat the ends of justice.

If the first count of the indictment be good, that will sustain a judgment although the second count should be held defective. (*Kane* v. *The People*, 8 *Wend.*, 210.) It is not therefore actually necessary for us to consider the objection made to the form of the second count. The answer to this objection,

however, is also quite obvious. The demurrer is that in the second count the offence is alleged to have been committed after the finding of the indictment, and this is said to be made out by the fact that the offence is laid in this count to have been committed not only on the first of August, 1857, but also with a *continuando:* "on divers other days and times between that day and the day of the finding of the indictment, to wit, the first day of July, 1857." If the day which is here named under the *scilicet*, were the true date of the finding of the indictment, there would be an obvious repugnancy or absurdity in the statement of the offence in the *continuando*. And if this were the only statement of an offence in the second count, the objection might be formidable, although I do not mean to say it would not admit of an answer. But the answer to the demurrer on this point is, that the count is sufficiently certain as to time, which is all that is requisite, in stating an offence to have been committed on the first day of August. As that was in fact before the finding of the bill, as appears from the indorsement of its filing, the count contains one sufficient statement of the offence, and the residue may be rejected. All the *continuando* may be rejected as surplusage, and with it the statement of the time of the finding of the indictment, which is only material in the *continuando*, if at all. This view is sanctioned by the case of *The People* v. *Adams* (17 *Wend.*, 475), and by the authorities of Hawkins and Chitty, cited by Ch. J. Nelson in that case.

All that remains is the main question, whether the sale of liquor by an unlicensed person is an indictable offence under the act of April 16, 1857. After the most careful examination which I have been able to give to this question since it was argued, I cannot entertain any more doubt upon this than the other points. It may be well to observe, in the first place, that little or no reliance was placed at the argument upon the objection that no indictment could be found until a complaint had been entered with a magistrate, and the party had given bail. I think the counsel for the defendant wisely declined to rest his case upon this defence. It does not strike me with

The People *v.* Gilkinson.

sufficient force to need an argument to show that there is nothing in it, and I only mention it to preclude the inference that it had not been considered in giving judgment.

Section 29th of the act in question is as follows: "It shall be the duty of courts to instruct grand jurors to inquire into *all offences* against the provisions of this act, and to present *all offenders* under this act, *and also* all persons who may be charged with adulterating imported, or other intoxicating liquors, with pernicious or deleterious drugs or mixtures, *which offences* are hereby declared to be misdemeanors, to be punished by imprisonment in the penitentiary, work house, or jail, for a period of three months, and by a fine of one hundred dollars." The first, and I think the principal question is, whether the word "offences," in the latter clause of this section, extends to and includes all violations of the statute, or only to that particular class of forbidden acts, the mention of which immediately precedes the phrase. I cannot see any reason to doubt that the words, "which offences," are here used as correlative and with reference to the phrases, "all offences," which it is made the duty of grand juries to inquire into, and "all offenders," who are to be presented, that is, indicted by the grand inquest. Certainly the most natural and obvious reference of the phrase "which offences," is to those acts which are described and included by the words "all offences" against the statute. The adulteration of liquors is not an offence against the act at all, unless it is made so by this very clause, which it is contended declares it, and it alone, a misdemeanor, but which certainly would seem to refer to some thing which had been made or declared offences by some preceding part of the act. The clause in question makes certain offences misdemeanors; but it was not intended, I think, to make any acts offences which were not otherwise and already in that category. Now, the adulterating liquor is no where else referred to in the law in question. It is neither prohibited in terms nor in effect by inflicting a penalty for doing it. On the other hand, there are other acts which are offences against this statute upon well settled principles of law, without reference to this section to

make them such. It seems to me a forced construction of the clause in question to say that it does not refer to nor include these acts which are offences by force of other parts of the law, whether they are here made misdemeanors or not, but that it is to have the double effect of making the adulteration of liquor an offence against the law, and of making that offence a misdemeanor.

Upon a rigid construction of this section as I view it, this phrase might rather be restricted to the offences and the offenders mentioned in the first clause of the section. But I cannot agree that such a construction should be put upon so plain and so plainly beneficial a statute as this. I think it more in accordance with the meaning of the legislation and with sound principles of construction, to hold that the effect of this portion of this section is to make both the adulteration of liquor and all other acts which are legally offences against the act, to be misdemeanors. At all events, where the statute speaks of "*all offences*," against its provisions as subjects of examination and indictment, and then using the same term with a relative, proceeds to say, "*which offences*" are declared misdemeanors, it seems to me unwarrantable to insist that the offences spoken of in the second and relative sentence, are different from such as are included in the antecedent. The same word is used in both, and in the latter clause it must include all acts which are legally considered offences against the law.

If then all acts which are offences against the statute, and not merely adulterating liquors, are declared to be misdemeanors by the clause in question, and there can be little doubt such was the design of the Legislature, the only question which remains is, whether the sale of liquor by a person not having a license, is an offence against the act. This precise question was raised and decided under the former excise law, as I read the cases and the statutes. Section 28th of that law (1 *R. S.*, 682), was to this effect: "All offences against the provisions of this title shall be deemed misdemeanors, punishable with fine and imprisonment." The statute contained no express prohibition of sales without license, but only sections declaring

The People *v.* Gilkinson.

that whoever should sell without a license should be liable to a penalty, almost *totidem verbis* with the 13th and 14th sections of the present act. The question was passed upon by the Supreme Court in two cases, whether this amounted to a prohibition so as to make an unlicensed sale a criminal offence. In *The People* v. *Stevens* (13 *Wend.*, 341), it was held that an indictment would lie for a violation of these sections. Again, in *The People* v. *Brown* (16 *Wend.*, 561), the counsel supposing that it might have been overlooked in deciding *The People* v. *Stevens*, the point was distinctly presented that an indictment will not lie for an act for which a penalty is inflicted, but which is not expressly prohibited in terms. It was the only point in the case, and, after advisement, Judge Cowen pronounced the opinion of the court that they were clear there was nothing in it. In *Griffith* v. *Wells* (3 *Denio*, 226), it was held that one who sold liquor without a license, could not recover against the purchasers on the same ground, that the act was unlawful because a penalty was inflicted for doing it, although it was not in terms prohibited. Ch. J. Bronson said: "Our excise law does not in terms prohibit the sale of strong or spirituous liquors without a license, nor declare the act illegal, but only inflicts a penalty upon the offender." But he says, "it was laid down long ago that where a statute inflicts a penalty for doing an act, though the act be not prohibited, yet the thing is unlawful." (*Bartlett* v. *Viner*, *Skin.*, 322.) In the report of the same case in *Carthew*, 222, Holt, Ch. J., said "*a penalty implies a prohibition though there are no prohibitory words in the statute.* Although this was but a dictum, the doctrine has been fully approved." These cases and their reasoning leave no room to doubt that under the present law a sale of liquor to be drank on his premises by a person not licensed, is an unlawful act, and a criminal offence just as if it had been expressly prohibited. The present and former statutes are, as I have said, alike in this respect, and there is as much in the present law as in the former statute to make a sale of liquor by an unlicensed person an offence, and to sustain an indictment against the offender. The only difference in the two acts in this particu-

lar is, that in the present law a sale which is an offence against the law is not only declared a misdemeanor, but the amount of the punishment is fixed in every case, and nothing is left to the discretion of the court as in other misdemeanors. Whoever is convicted must suffer three months' imprisonment and a hundred dollars fine. I am unable to see how we can refuse to sustain an indictment for selling liquor without a license under the present statute, without overthrowing principles which have been long and thoroughly settled, and overruling cases which were well considered and have been steadily adhered to in the administration of this portion of the criminal law, not to go further back, at least from 1830 down to 1855.

The demurrer is overruled, and there must be judgment for the People.