(13 App. Div. 195.)

### COLON et al. v. LISK et al.

(Supreme Court, Appellate Division, Second Department. January 26, 1897.)

CONSTITUTIONAL LAW—DUE PROCESS OF LAW—JURY TRIAL.
  A trial by jury is essential to proceedings to forfeit property of substantial value because used in violation of law; and therefore Laws 1895, c. 974, § 189, subd. 4, as amended by Laws 1896, c. 383, providing for the forfeiture of a vessel and its equipment on a determination by a justice of the peace that the vessel was used in violation of subdivision 1, regulating oyster fishing, conflicts with Const. art. 1, § 6, providing that no person shall be deprived of his property without due process of law.

Appeal from special term, Richmond county.

Replevin by Thomas Colon and others against John W. Lisk and another. From an interlocutory judgment entered on an order overruling a demurrer to the answer, plaintiffs appeal. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Benjamin Patterson, for appellants.
Elmer G. Sammis, for respondents.

HATCH, J. The action is replevin, and the allegations of the complaint show that plaintiffs are the owners of the oyster sloop Jessie, together with a large number of articles of personal property; that heretofore the defendants wrongfully and unlawfully took from the possession of the plaintiffs said sloop and other articles of personal property, to plaintiffs' damage. The answer admits the ownership of the property and its taking, and for affirmative defense it is averred that they are officers of the law, duly commissioned as such by the fisheries, game, and forest commission of the state; that as such officers they are charged with the duty of executing the fish and game laws of the state; that the said sloop Jessie was, prior to her seizure, used in violation of subdivision 1 of section 189 of the fisheries, game, and forest law, in that the said sloop was engaged in disturbing the oysters of one Peter Polworth, lawfully planted in the waters of Prince's Bay, in the state of New York; that acting as such officers, and in their official capacity, they seized the sloop,

together with her tackle, apparel, and furniture, in accordance with the terms of subdivision 2 of aforementioned law. The demurrer which is interposed is to the affirmative defense, and its grounds are stated to be that it is insufficient in law upon its face, and that it does not state facts sufficient to constitute a defense to the cause of action set out in the complaint. The argument in support of the demurrer is that the act relied upon to justify the seizure of the vessel is unconstitutional, in that it violates article 1, § 6, of the constitution, by depriving plaintiffs of their property without due process of law. The provisions of the statute relied upon are found in chapter 383 of the Laws of 1896, which amends section 189 of chapter 974 of the Laws of 1895. So far as material to the present question, the amended law provides (section 189):

"* * * No person shall in anywise interfere with, take, disturb or carry away the oysters of another lawfully planted or cultivated in any of the waters of the state, or remove any stakes or buoys or any boundary marks of any planted or cultivated beds. [A violation of this provision is made a misdemeanor, to which a penalty is attached.]

"(2) All sheriffs, deputy sheriffs and constables shall, and any other person may, seize any boat or vessel used by any person or persons in violation of subdivision one of this section, together with the tackle, apparel and furniture of said boat or vessel, wherever found, within one year after such violation, and shall forthwith give notice thereof to any justice of the peace of the county where the seizure was made.

"(3) The justice of the peace, to whom such notice is given as provided in subdivision two of this section, shall forthwith fix a time and place for trial, and give at least six days' previous notice of the same to the person or persons in possession of said boat or vessel at the time of such seizure, and also to the owner thereof, if said persons entitled to such notice are known and are residents of the county within which the seizure is made. If any of the persons entitled to such notice are unknown or are non-residents of the county where the seizure is made, then the said justice of the peace shall order that a notice directed to such person or persons, if known, or if unknown, then generally to whom it may concern, be published once a week, for two successive weeks, in a newspaper published in the said county, which notice shall contain, as near as may be, a description of the boat, vessel or property seized, a concise statement of the grounds of seizure thereof, and the time and place fixed by the said justice of the peace for trial, which time shall not be less than six days from the day of the last publication of such notice.

"(4) At the time and place fixed by the said justice of the peace for trial, or at such time and place to which the said justice of the peace may adjourn the same, he shall determine by the evidence taken by him whether such boat, vessel or property was used in interfering with, taking, disturbing or carrying away oysters or other shell fish in violation of any provisions of this section, and if said justice of the peace shall determine that said boat, vessel or property was so used, he shall order the same to be sold, together with the furniture, tackle and apparel, and shall direct the manner of the sale thereof. The avails from such sale, after deducting all the charges and expenses of such seizure, trial and sale, which said justice of the peace may allow, shall be paid to the commissioners of fisheries, game and forest."

By consent of parties, announced upon the argument, the answer is to be considered as in all respects sufficient as a justification of the seizure under the act, and the sole question presented for our determination is the constitutionality of the statute itself. The right of the state to exercise dominion and control over its territory extends to and embraces the lands which lie under the waters within its jurisdiction; and under its proprietary rights therein it may

regulate and control the public right of fishery, and also protect private rights of property therein, so far as they may be properly recognized in connection with the public enjoyment. This right of the state to exercise control over that part of its territory which lies below high-water mark is subject only to the exception that its legislation in respect thereto shall not come in conflict with the laws of the United States, in its admiralty jurisdiction or otherwise. U. S. v. Bevans, 3 Wheat. 336. So far as relates to the police power, the state has the same rights, and possesses the same power to regulate the public enjoyment, and protect private interests, in this part of its domain, as it has over other parts of its territory; and to this end it may enact such laws as will preserve from destruction the public right of fishery in its waters, and forbid acts which interfere with the public right or private enjoyment therein. Such laws in no wise conflict with the authority of the United States in its admiralty jurisdiction or otherwise. Smith v. State, 18 How. 71. In this case it was held, under a statute of the state of Maryland in many respects similar to the one we are now considering, that the right to inflict a forfeiture of the vessel violating the act existed, and that such legislation followed established principles which had been applied by most civilized governments, and to this end it was within the power of the state to intercept the voyage and inflict the forfeiture, even though the vessel was enrolled and licensed under the laws of the United States. This case has been recently cited, and its doctrine upheld, not only in the supreme court of the United States, but in the court of appeals of this state. Lawton v. Steele, 119 N. Y. 226, 23 N. E. 878; same case on appeal, 152 U. S. 138, 14 Sup. Ct. 499. It is the established doctrine of these cases that it is no objection to such legislation that the property forfeited is innocent and harmless of itself, or that the owner may not have consented to its use for the unlawful purpose. The right exists in the legislature to declare it a nuisance, and, in some cases, direct its summary destruction without judicial process. The power to declare the property forfeited, and provide for a judicial determination so adjudging it, for an offense, such as this law creates, is clearly upheld, and the discussion therein covers every view of the question touching the power to declare the property forfeitable. It is not necessary, therefore, that we further pursue the discussion upon this branch of the case. What facts will constitute a defense to an action brought to forfeit property violating the act presents a question which may become difficult of solution. If the property was used to violate the act in direct opposition to the wishes and commands of the owner, or if it should be stolen, and so used by those guilty of the larceny, a strong equitable case would be presented, to say the least, in favor of the owner. But would it constitute a defense to a decree of forfeiture? It is intimated in Boggs v. Com., 76 Va. 989, 997, that such conditions might constitute a defense. It may be that in such event the vessel would be considered as being outside of the statute, and held not to apply to such a case. But we may now make two answers to this consideration. It is not necessary to a disposition of this case for us to decide the question;

consequently, we express no opinion thereon. Assuming it to be a fact that an innocent owner may suffer does not necessarily render such a statute unconstitutional. U. S. v. Brig Malek Adhel, 2 How. 233; Bertholf v. O'Reilly, 74 N. Y. 525.

In order to work a forfeiture and divest the individual of his property there must be due process of law, and the right must be established in due course of judicial procedure. What will answer this requirement is firmly imbedded in the law, and has often been defined in varying phrase, but in substance the same. "Generally, that due process of law requires an orderly proceeding, adapted to the nature of the case, in which the citizen has an opportunity to be heard and to defend, enforce, and protect his rights." Stuart v. Palmer, 74 N. Y. 183; In re Union El. R. Co. of Brooklyn, 112 N. Y. 61, 19 N. E. 664. Does this act meet this requirement? So far as the vessel is concerned, the proceeding for forfeiture, although in the nature of a penalty, is a proceeding in rem against the thing itself. The cause of forfeiture is a trespass upon public or individual rights. The personal trespass committed by the individual is made a misdemeanor, and a penalty is attached thereto. The article by means of which the trespass was committed is declared liable to seizure and liable to forfeiture. The act authorizes the seizure of the vessel without complaint made to, or process issued by, any court or judicial officer. In principle, the case is not different from the act authorizing a seizure of animals found trespassing or running at large. To some extent the necessity for such seizure grows out of the character of the property which is the subject of the forfeiture. Unless seizure was permitted of the animals trespassing until process could be obtained, they might travel off and get beyond reach, or they might continue to inflict damage. In the case of the vessel, it can sail away beyond the jurisdiction of the court, and never be found to submit to the just demands of the statute it has offended, unless immediate seizure be permitted. But however this may be, or whether there be in fact any necessity for authorizing seizure without process, it is settled law that a temporary seizure of property without process, to be held to await subsequent judicial action in respect thereto, violates no provision of the constitution. Cook v. Gregg, 46 N. Y. 439; Corfield v. Coryell, 4 Wash. C. C. 371, Fed. Cas. No. 3,230. After seizure, the act provides for a judicial proceeding which may or may not lead to a judgment of forfeiture of the thing seized. It provides, first, for a personal notice to the person or persons in possession of the vessel seized, and also to the owner thereof, of the time and place of trial, if such persons are known and are residents of the county where the seizure is made, which notice must be served at least six days prior to the trial. If they are unknown, or are nonresidents of the county, then provision is made for publication. Similar provisions for judicial proceedings in other acts of the legislature, inflicting penalties, working forfeitures, and creating liens, have been upheld as valid acts answering, so far as notice is concerned, the constitutional provision requiring due process of

law in order to divest a person of title to his property.    Campbell
v. Evans, 45 N. Y. 356.    It was said in that case:

"In analogy to proceedings in other cases in rem, or for enforcing specific liens
upon or forfeiture of property, the legislature has provided for notice, in such
form and for such length of time as they thought reasonable, and best calculated
to inform the owner of the proceedings, and give him an opportunity to be heard;
and the mode and manner of giving the notice is neither untenable nor illusory."

The same doctrine is also announced in Happy v. Mosher, 48 N.
Y. 313.    There is, therefore, no difficulty in supporting the act in
this respect.    By the provisions of this statute it is made the duty
of sheriffs, deputy sheriffs, and constables to seize any boat or ves-
sel violating the act, and any other person may make the seizure.
Vessels of the largest tonnage and of immense worth are thus made
liable to seizure, there being no limit in the act as to size, char-
acter,   or value.   A justice of the peace is given jurisdiction to de-
cree forfeiture and direct sale after hearing the evidence.    No pro-
vision for a trial by jury is given, and no right of appeal is pro-
vided.    The right which the constitution secures to the person whose
property is sought to be taken is a trial by jury as such right for-
merly existed.    If the right to it did not formerly exist, then he
is not now entitled to have it preserved or provided.    Sheppard v.
Steele, 43 N. Y. 52;   People v. Supervisors of Essex Co., 70 N. Y.
228–234;   Cooley, Const. Lim. 504, 505.

To a limited extent, the power exists in the legislature, exercis-
ing its authority to protect and preserve the public interests from
destruction, and to restrain the unlawful depredation of individuals
in connection therewith, to declare property so used a nuisance,
and direct its destruction without the intervention of judicial au-
thority;   and, where the property so used and destroyed has been
of small comparative value, such legislation has received the sanc-
tion of the courts.    Lawton v. Steele, 119 N. Y. 226, 23 N. E. 878;
affirmed on appeal, 152 U. S. 133, 14 Sup. Ct. 499.    The instructive
discussion of the principles involved in these decisions shows clear-
ly that each tribunal recognized the delicate character of the au-
thority which was upheld;   and these cases, in their last analyses,
must rest for support upon the ground that as the purpose of the
legislation was clearly beneficent, and the property authorized to
be destroyed was insignificant in value, it would belittle the dig-
nity of judicial tribunals to take cognizance of matters so small
and insignificant in themselves, while the expense incurred if ju-
dicial procedure was required would be so great as probably to
result in the nonenforcement of the law.    Even in this case the au-
thority of the legislature did not pass unchallenged, and the reason-
ing which supported it was subjected to criticism, as is evidenced
by the strong dissent in the supreme court;   and the reasoning of
the prevailing opinion clearly shows that such authority would not
be sustained when the property upon which the act would operate
was of substantial value.    These decisions are analogous to, and
in substantial harmony with, those which deny the constitutional
right to trial by jury of petty offenses triable in special sessions.

People v. Justices of Court of Special Sessions, 74 N. Y. 406. The question of constitutional right to a trial by jury in the exercise of power which we are now considering was much considered in the Wynehamer Case, 13 N. Y. 426. It was there said that the right to a jury trial, where it had previously existed, did not "limit the right to the mere instances in which it had been used, but extends it to such new and like cases as might afterwards arise." In People v. Dutcher, 83 N. Y. 240, it was held that the offense of petit larceny was within the constitutional provision requiring a jury trial, were it not for the fact that, by amendment of section 26 of article 6 of the constitution, jurisdiction was conferred of offenses of the grade of misdemeanor upon courts of special sessions. These cases are authority, therefore, for the proposition that, where the right existed to trial by jury at the time of the adoption of any of the constitutions, such right continues to exist unless taken away by the fundamental law, and that this right is not limited to cases where such right had previously been actually used, but embraces cases of the same class thereafter arising; so that if, prior to the adoption of the constitution, the right to enforce a penalty by a forfeiture of property could only be done through the medium of an action, and the party against whom the forfeiture was sought to be enforced was entitled to trial by jury, then such right exists now, and the law is applicable to the present case.

It cannot be doubted that a forfeiture of property for a prohibited act is a penalty for committing the act. It is so denominated by lexicographers, and is so treated in judicial decisions. Lawton v. Steele, 152 U. S. 138, 14 Sup. Ct. 499. It was said by Judge Strong, in Wood v. City of Brooklyn, 14 Barb. 432:

"It is a matter of public notoriety that suits for penalties * * * have generally been tried before a jury. If there have been exceptions, they have not been sufficiently numerous to affect the general usage. The introduction of a new subject into a class renders it amenable to its general rules, not to its exceptions, unless there is something peculiar calling for their application. To allow the legislature to except from the operation of a constitutional provision, by direct enactment, a matter clearly falling within its meaning, would sanction a fraud upon the organic law, and might in the end destroy its obligation."

Warren v. People, 3 Parker, Cr. R. 544.

We think this quotation a correct exposition of the law upon the subject to which it relates. In Fire Department v. Harrison, 2 Hilt. 455, it was held that an action to recover a statutory penalty was triable by jury, and that it was beyond the power of the legislature to confer such authority upon a court of equity. A diligent search will show that in nearly all the statutes of this state, if not all, where a penalty has been imposed which may be enforced against the property of the individual, the remedy is uniformly by action, where the party has the right to a trial by jury, except in those cases, and some others to be hereafter noted, where, as we have seen, summary destruction of property is permissible. Bennett v. Ward, 3 Caines, 259. In this respect the rule is different as regards the person. Acts are prohibited, and penalties are attached

to statutes, which, when incurred, may be and are enforced against the person by way of punishment, and may result in imprisonment of the individual offending, where no jury intervenes or right to it exists. Illustrations are found in the punishment attached to petty offenses, to the violation of health laws, and in some instances of municipal regulations, and perhaps others. But where the proceeding is given which results in a judgment that operates upon the property of the individual, either by way of forfeiture or by means of execution, the uniform rule of law has always been that, before such judgment can pass, the individual is entitled to a jury trial, unless he waives the same. It is interesting to note how little appears in the books regarding the procedure which has been or may be taken to enforce a fine imposed upon a person for a criminal offense where no direct action was brought to recover the fine. So far as we are able to find, the first reported case upon the subject is that of Rex v. Woolf, 1 Chit. 401; Id., 21 Rev. Reports, 412, decided in 1819. In that case the defendant had been tried and convicted under an indictment charging a conspiracy, for which a fine was imposed of a large amount, in addition to imprisonment. Motion was made that a writ levari facias issue against the goods of the defendant to enforce the fine which he had been adjudged to pay. The motion was denied, but the parties were left to subsequently move for the remedy if authority could be found entitling them thereto. Counsel were only able to find two cases where the writ had been authorized, and those of a time antedating the Revolution and 140 years prior to the application. It was urged that by reason of the lapse of time that had intervened, during which period the writ might have been resorted to, but had not been, there was strong ground for saying that the right thereto did not exist. This view was not adopted, the court holding that the right existed, based upon the common-law doctrine that it was an attribute of sovereignty authorizing the levy for a debt due to the crown by the united process against the body, the lands, and the goods of the defendant. Our research has not enabled us to find that this case, upon this point, has been cited as an authority since. In Archb. Cr. Prac. & Pl. marg. p. 205, the right to the writ is recognized for the purpose of collecting a fine which has been imposed. But the authority of the court of oyer and terminer to grant the writ was doubted, and the practice was recommended of removing the matter by certiorari into the court of queen's bench, where execution would issue as of course. In Kane v. People, 8 Wend. 203, the question was somewhat considered. The defendant in that case had been convicted under an indictment charging defendant, with others, as directors of a turnpike company, with failing to keep the highway in repair. Conviction of defendant was had, and a fine was imposed. The judgment pronounced was "that the said Kane  * * * pay to the said people  * * * a fine,  * * * and that process for the recovery thereof be and the same is hereby awarded, according to the course and practice of this court." It was alleged that the judgment was erroneous in not directing that

the defendant be committed to jail. In the course of the discussion, Chancellor Walworth said:

"It seems now to be well settled that, for the collection of the fine imposed upon the defendant upon such conviction, the people have the right to proceed against the property of the defendant by a levari facias, as well as against the body. * * * All that is necessary to insert in the judgment in relation to the execution is the award of the proper process to carry into effect the sentence of the court."

Senator Seward, who delivered the only other opinion, was not so clear upon this point. He disposed of it upon the ground that, if the judgment in this respect was error, it did not lie with defendant to urge it; that it could be cured by amendment. The Revised Statutes with the revisors' notes (3 Rev. St. [2d Ed.] Appendix, p. 850) reveal a proposed statute providing that, whenever a fine shall be imposed upon a conviction for any offenses, judgment shall pass against the defendant, be docketed as records in civil cases are docketed, and enforced in like manner by execution. But this statute was not adopted, and none has even been upon that subject. The note of annotation in the report of the Kane Case, supra, calls attention to the Revised Statutes providing for process for the collection of fines (2 Rev. St. p. 484, §§ 22, 23), and queries whether such statutes have application to fines imposed upon conviction by indictment; and it may well be doubted whether the proceedings therein provided for can be extended beyond the cases named therein. But whatever may be the state of the law upon this subject at the present time, it is sufficient for us to say that, admitting the right to exist to enforce a fine on any character by execution, the present question is not affected thereby. In each of the cases cited the property authorized to be seized was the property of the offending person. In each case, before execution was authorized, a judgment existed, based upon the verdict of a jury. Under the present statute, as we have seen, no trial by jury is provided, and this must precede the right to declare a forfeiture or issue an execution. If exceptions exist, they should not be held to work a change in the general usage. The provisions of the present law fail to provide for a trial and determination of the issues which may be presented by a jury, and therefore work a change in the general usage which has heretofore prevailed in such cases. As we have before observed, the act makes no provision for an appeal, and therefore presents no opportunity for a trial by jury in any appellate tribunal,—a provision which was held to answer the requirement of the constitution in People v. Justices of Court of Special Sessions, 74 N. Y. 406.

We are therefore of opinion that this act, so far as it provides for a determination of the question of forfeiture by the justice without the intervention of a jury, is within the prohibition of the constitution and repugnant thereto, as authorizing the divestiture of property of the individual without due process of law, and in violation of his right to a trial by jury. We are cited to the case of Haney v. Compton, 36 N. J. Law, 507, as holding a doctrine contrary to the conclusion at which we have arrived. It must be admitted that this case decides what is claimed for it. The statute

which was the subject of consideration in that case, in this respect, is quite similar in its provisions to the one now before us. The discussion of the present question, however, is quite meager, and the holding is made to rest upon the authority of McGear v. Woodruff, 33 N. J. Law, 213; and while the opinion states that the question considered in the latter case is analogous to the one determined in the former, yet an examination, as we conceive shows it to have been quite different. In the McGear Case the question arose in an action to recover a penalty for a violation of a municipal ordinance to which the penalty attached was a fine of not exceeding $20 or imprisonment not exceeding seven days. The decision was rested upon the ground that, as to actions and proceedings for petty offenses, the constitutional provision for a trial by jury had not before existed, and was not provided by the constitution of the state. The court applied the principle decided in Johnson v. Barclay, 16 N. J. Law, 1, as authority decisive. The latter case was an action to recover a penalty for profane swearing. As we have seen, the right to trial by jury for petty offenses did not exist, as matter of right, prior to the adoption of the constitution in this state, nor did it exist in the state of New Jersey. But the forfeiture which is here sought is not such a case, and we think the principle clear in distinction, for reasons already pointed out, from that which was applied by the court in the Haney Case. But whatever the rule be in other states, we think the law is clearly settled in this, and that, as settled, it condemns this feature of the act.

It follows that the interlocutory judgment should be reversed, and judgment ordered in plaintiff's favor upon the demurrer, with costs. All concur.