Allen, J.
The question of gravest import, and which is to he considered in limine, as that upon which the jurisdiction of the court to consider the other question presented depends, relates to the office and effect of the writ of habeas corpus, under our system of jurisprudence, and the statutes of the State regulating proceedings under it. Belief from illegal imprisonment by means of this remedial writ is not the creature of any statute. The history of the writ is lost in antiquity. It was in use before magna chareta, and came to us as a part of our inheritance from the mother country, and exists as a part of the common law of the State. *566 It is intended and well adapted to effect the great object secured in England by magna charta, and made a part of our Constitution, that no person shall be deprived of his liberty “ without due process of law.” (Const., art. 1, § 6.)
Whenever the virtue and applicability of the writ have been attacked or impugned, it has been defended, and its vigor and efficiency reasserted, as the great bulwark of liberty. The statutes which have been passed in England from the time of Charles II (31 Car. 2, C. 2), and in this State from the time of its first organization, have not been intended to detract from its force, but rather to add to its efficiency. They have been intended to prevent the writ being rendered inoperative, by increasing the facilities for procuring it, enlarging the class of officers having jurisdiction in respect of it, imposing penalties for refusal to grant it, or to obey it, and providing for a speedy return, and a prompt trial and discharge, of the person, if not held according to the law of the land. (3 Bl. Com., 135; Ex parte Watkins, 2 Peters, 193.) The earlier statutes of this State, did not profess to deal with or regulate the common law jurisdiction over this writ, which existed in the Supreme Court and Court of Chancery, but had respect only to the jurisdiction conferred, by statute upon, and exercised by judicial officers out of court.
The Revised Statutes regulate .the exercise of this jurisdiction, as well by courts as magistrates, embracing not only cases in vacation, but in term time. (2 R. S., 563 ; 5 id. [Edm. ed.], 511, revisers’ notes.) This writ cannot be abrogated, or its efficiency curtailed, by legislative action. Cases within the relief afforded by it at common law cannot, until the people voluntarily-surrender the right to this, the greatest of all writs, by an amendment of the organic law, be placed beyond its reach and remedial action. The privilege of the writ cannot even be temporarily suspended, except for the safety of the State, in cases of rebellion or invasion. (Const., art. 1, § 4.)
The remedy against illegal imprisonment afforded by this *567 writ, as it was known and used at common law, is placed beyond the pale of legislative discretion, except that it may be suspended when public safety requires, in either of the two emergencies named in the Constitution. This provision of the Constitution is a transcript of the former Constitution of the State, and it cannot be intended that the framers of the Bevised Statutes, by which the practice of the courts in term time was placed under the same regulations as that which had from the first been prescribed for the officers upon whom power had been conferred from time to time by statute, designed to interfere with the principles governing the exercise of the jurisdiction, or lessen the value, the efficiency or importance of the writ itself, which, in respect of the jurisdiction of the Supreme Court and Court of Chancery, was beyond the reach of legislation.
Bringing the procedure in term time, as well as in vacation, within the same general rules, removes all doubt that the intent was that every court and officer having power to grant a writ of habeas corjjus, and to pass upon the legality of an imprisonment, has and may exercise, in the forms prescribed by law, all the power exercised at common law by the Court of Bing’s Bench in England, and the Supreme Court of this State, as the corresponding tribunal with us.
There is no occasion to be alarmed, or to be frightened out of our propriety, lest, by reason of the number of magistrates to whom this great power has been committed, the judgments of superior courts will be nullified, and judicial proceedings rendered nugatory, so far as they interfere with personal liberty. The power has existed in many inferior magistrates for more than three-fourths of a century, and the laws and judgments of courts have been executed without unseemly interruption by means of this writ of liberty, and although a third of a century since a distinguished executive of this State called the attention of the legislature to the very danger now invoked as a reason for so construing the statute as to contract the jurisdiction of this writ, the legislature did not participate in the fears expressed, and suffered the statutes to *568 remain in that form, by which the liberty of the citizen would have the largest protection. (3 Hill, 649, note.) It is no new feature in the law that inferior magistrates may, when thereunto called, sit in judgment upon the jurisdiction of the highest courts, when their process or judgments come collaterally before them. Trespass will lie for property seized, or for the imprisonment of a person by virtue of the judgment of the highest court of the State, if it has not jurisdiction of the person, or to give the judgment, and a justice of the peace must pass upon the jurisdiction, if the action chances to be before him for trial. It matters not what the general powers and jurisdiction of a court may be; if it act without authority in the particular case, its judgments and orders are mere nullities, not voidable, but simply void, protecting no one acting under them, and constituting no hindrance to the prosecution of any right. (Elliott v. Peirsol, 1 Pet., 328.) The distinction between courts of limited and of general jurisdiction is this, that when their acts and judgments are relied upon, either as giving a right or furnishing a defence, ' jurisdiction of the latter is presumed, while that of the former must be proved; but the presumption in favor of the jurisdiction of the court of general jurisdiction is one of fact, and not conclusive. It may be rebutted. If it depends upon the existence of certain facts, and the court has passed upon those facts, the determination is conclusive until its judgment has been reversed or set aside, and this rule is as applicable to the judgments of inferior, as of superior courts. (Staples v. Fairchild, 3 Comst., 41; Chemung Canal Bank v. Judson, 4 Seld., 254.) There is nothing startling in the application of these well recognized principles to proceedings by the habeas corpus, in favor of the citizen restrained of his liberty, under color of judicial proceedings, absolutely void. Neither should the habeas corpus act, which judges have “revered as the bulwark of the Constitution, the magna charta of personal rights,” be shorn of its power and its glory by a subtle and metaphysical interpretation; rather should it receive a liberal construction, *569 in harmony with its grand purpose, and in disregard, if need be, of technical language used.
This act has always been construed in favor of, and not against, the liberty of the subject and the citizen; and the reading must be the same whether the benefit of it is invoked by the purest and best citizen of' the State, or the greatest sinner, and the one most worthy of condign punishment. The law is no respecter of persons, and suffers no man, be he guilty or innocent, to be deprived of his liberty, except “ by due process of law; ” and the writ of habeas corpus is as available, even to the guilty, and he whom the popular voice would condemn, as it has proved against commitments by the king in council. But the act needs no interpretation, and is in full accord with the common law, and the adjudications both in this State and in England, and with the Constitution.
Persons committed or detained by virtue of the final judgment or decree of any competent tribunal of civil or criminal jurisdiction, or by virtue of any execution issued upon such judgment or decree, are expressly excluded from the benefit of the act. (2 R. S., 563, § 22.) And if, upon the return of the writ, it appears that the party is detained in custody by virtue of such judgment or decree, or any execution issued thereon, he must be remanded. (Id., 567, § 40.) Such persons are deprived of their liberty “ by due process of law,” and are not within the purview of the Constitution, or the purposes of the writ. To bar the applicant from a discharge from arrest by virtue of a judgment or decree, or an execution thereon, the court in which the judgment or decree is given must have had jurisdiction to render such judgment. The tribunal must be competent to render the judgment under some circumstances. The prohibition of the forty-second section of the habeas corpus act, forbidding the inquiry, by the court or ofiicer, into the legality of any previous judgment, decree or execution specified in the twenty-second section, does not and cannot,'without nullifying, in good measure, the provisions of that and other sections of the act, take from the court or officer the power, or relieve him from the *570 duty of determining whether the process, judgment, decree or execution emanated from a court of competent jurisdiction; and whether the court making the judgment or decree, or issuing the process, had the legal and constitutional power to give such judgment, or send forth such process. It simply prohibits the review of the decision of a court of competent jurisdiction. If the record shows that the judgment is not merely erroneous, but such as could not, under any circumstances, or upon any state of facts, have heen pronounced, the case is not within the exception of the statute, and the applicant must be discharged. If the judgment is merely erroneous, the court having given a wrong judgment when it had jurisdiction, the party aggrieved can only have relief by writ of error, or other process of review. He cannot be relieved summarily by habeas corpus.
The inquiry is necessarily in every case whether the process is void, and the officer or court having jurisdiction of the writ must pass upon it. If a process good in form issued upon a judgment of a court having jurisdiction, either general or limited, must in all cases be assumed to be valid until the judgment be reversed upon error, the remedy by writ of habeas corpus will be of but little value.
The distinction between judgments void and those erroneous, and therefore voidable, is recognized in all the cases to which we are referred. All the eminent jurists who delivered opinions in the celebrated case of John V. N. Yates, in its various phases and stages (as reported 4 J. R., 318; 5 id., 281; 6 id., 337, and 9 id., 394), affirmed the doctrine, although they differed widely in their judgments in that particular case, but their differences, as well as the ultimate decision of the matter, turned upon the peculiar circumstances of the case, and do not hear, except very remotely, upon the question now under consideration.
Mr. Hill, in his valuable note to the McLeod Case (3 Hill, 647), has carefully, and with his usual accuracy, epitomized the law relating to the writ of habeas corpus, and pointed out the departures under the statutes of this State, from the *571 common law, and the propositions enunciated by him are well sustained by the authorities cited in the note, and, so far as applicable to the case in hand, may be briefly summed up. As well at common law as under the statutes of this State, if the party is detained on process, the existence and validity of the process are the only facts in issue, and the right to inquire into the validity , of the process is co-extensive with that which is allowed in an action for false imprisonment. If the process is valid on its face, it will be deemed prima facie legal, and the prisoner must assume the burthen of impeaching its validity by showing a want of jurisdiction. Error, irregularity, or want of form, is no objection; nor is any defect which may be amended or remedied by the court from which it issues. If there was no legal power to render the judgment or decree, or issue the process, there was no competent court, and consequently no judgment or process. All is coram non judice and void. (See 3 Hill, note, supra, pp. 659, 661 and 665, and cases cited.) When a prisoner, convicted in a court of local limited jurisdiction sought to be discharged on habeas corpus, on the ground that the offence was committed without the jurisdiction of the court, the application was denied, for the reason that the indictment charged the locus in quo to be within the jurisdiction of the court, and that fact must have been found by the jury, if traversed, or the jurisdiction was admitted, the court holding that the truth of the record could not be impeached on habeas corpus. The general principle that the want of jurisdiction appearing upon the record would be good cause for a discharge, was not questioned. (In re Newton, 16 C. B., 97.) Rex v. Collyer (Sayer, 44), was a habeas corpus for the discharge of persons in execution under a judgment which was illegal, because in excess of the power of the court. The Court of Quarter Sessions had jurisdiction of the offence, and of the persons of the accused, but the judgment upon an indictment for an assault was imprisonment one month, and that the defendants ask pardon upon their knees of the prosecutor, and cause an account of the sentence to *572 be printed in the Daily Advertiser, and not to be discharged out of prison until the judgment had been fully performed.
The judgment was held illegal, except the imprisonment, and the defendants were discharged, and were not put to their writ of error.
In Crepps v. Durden (2 Cowp., 640), in an action of trespass, a conviction by a justice of the peace for more than one penalty for exercising the ordinary calling of a party on Sunday for the same day, was held void, by reason of the excess of jurisdiction - the action was sustained, although the convictions were not quashed. The jurisdiction of the magistrate to convict and punish for one offence was not questioned, but the court adjudged that he had no jurisdiction whatever in respect of the three last convictions, for the reason that there could be but one offence, and one punishment for the acts of a single day.
In People v. Cassels (5 Hill, 164), the court, by Bronson, J., say that the prisoner had an undoubted right, when brought before the commissioner on habeas corpus, to show that the committing magistrate acted without authority, notwithstanding the commitment recites the necessary facts to give jurisdiction; that no court or officer can acquire jurisdiction by the mere assertion of it. Upon principle as well as upon authority, the court or magistrate having jurisdiction of the writ of habeas corpus must have the right, in order to give effect to the writ, to inquire into the jurisdiction of. the court to give the judgment or decree, or issue the process by which the person is deprived of his liberty. In so doing he but inquires whether he is deprived of his liberty “ by due process of law,” or the judgment of a court of competent jurisdiction. '
When a prisoner is held under a judgment of a court made without authority of law, the proper tribunal will, upon habeas corpus, look into the record so far as to ascertain this fact; and if it be found to be so, will discharge the prisoner. (Ex parte Lange, 18 Wall., 163.) The court say it is no answer to say that the court had jurisdiction of the person of the pris *573 oner, and of the offence, under the statute. It by no means follows that these two facts make valid, however erroneous it may be, any judgment the court may render in such a ease.
In Bigelow v. Forrest (9 Wallace, 339), a judgment was held void, because in excess of that which by law the court had power to make. In the language of Judge Miller (18 Wallace, supra), “ in a case where the court had full jurisdiction to render one kind of judgment, operating upon the same property, it rendered one which included that which it had a right to render, and something more; and this excess was held simply void.” I see no escape from the conclusion that the jurisdiction of the Court of Oyer and Terminer, to give the judgment or judgments which appear upon the record returned to this court,' and by virtue of which the relator is held, was a proper subject of inquiry upon the return of the writ of habeas corpus. It was the only fact which the prisoner could allege, for, whatever errors the court may have committed prior to the judgment, if the court had power to make the judgment, they can only be reviewed by writ of error. In other words, upon the writ of habeas corpus, the court could not go behind the judgment, but upon the whole record, the question was whether the judgment was warranted by law, and within the jurisdiction of the court.
This conclusion, as to the potency and efficiency of the writ of habeas corpus to test the jurisdiction of every court in the land, assuming, by its judgments, decrees and process, tó deprive the citizen of his liberty, and which is entirely consistent with the history, uses and sacredness of the writ, and its connection with civil liberty and free government, makes it necessary to consider the questions made upon the record, of the convictions and judgments returned to us. Our examination will be confined to that record. We shall not assume to go back of it for any purpose, for by it must the jurisdiction, as challenged, be tried. Bearing in mind the distinction between judgments merely informal or erroneous and those void as without jurisdiction, coram *574 non judice, the question is, had the Court of Oyer and Terminer the power to pronounce the several judgments, and inflict the accumulated punishments upon the conviction of the prisoner of the offenses, as charged in the single indictment ?
Whether it was error to join in the same indictment counts for several distinct offences, or whether the court should have compelled the prosecutor to elect between the several counts, are not questions that can be considéred upon this hearing. • They do not go to the jurisdiction of the court, and can only come up on error from the judgment. The court had jurisdiction of the person of the accused, and of criminal offences committed within the county of ISTew York, and necessarily had jurisdiction to pass upon the form and sufficiency of the indictment, and the order and course of the trial, and decide every question that arose in its progress, and whether the determinations of the court, upon any or all of the questions, were right or wrong, did not affect the jurisdiction. In other words, the court had jurisdiction to make wrong, as well as right, decisions, in all the stages of the prosecution, and whether those made were right or wrong cannot be raised on habeas corpus. This renders it unnecessary to consider in much detail, or at all, except as they • may incidentally aid in the consideration of the question actually presented, those cases in which the question has been as to the propriety of uniting, for the purposes of a trial, several offences in one indictment, and the duty of the court to compel the prosecutor to elect when distinct offences are so charged. In theory, every count in an indictment is for a distinct offence, but in fact, as is very well understood, in most cases, several counts are resorted to, and the same offence stated in different forms, and with different circumstances, to meet the evidence that may be adduced upon the trial. The class of cases in which indictments of that character have come under review can have no possible bearing upon the questions before us. In no event could there be, in such cases, but a *575 single punishment, and that as for the one offence, charged in different ways, to avoid objections for variance.
But there are cases to which reference will hereafter be made in .which distinct offences have been joined in separate counts in the same indictment, and it has not been held error. How far these cases justify cumulative judgments aggregating a punishment in excess of that prescribed by law for the specific grade of offences charged, will be considered in another connection. It is safe to say, however, that these cases do not necessarily warrant the conclusion that a con■viction for several offences thus charged is the equivalent of several separate convictions upon distinct indictments as authorizing several distinct judgments.
Reference is made, and stress laid upon the statutes of this State (2 R. S., 700, § 11), directing that, upon the conviction of a person of two or more offences, before sentence shall have been pronounced upon him for either, the imprisonment to which he shall be sentenced upon the second or subsequent conviction shall commence at the termination of the first or second term of imprisonment, as the ease may be. This statute has respect to separate convictions upon distinct trials, and neither affirms or disaffirms the practice pursued in this case, and does not sustain it by implication or otherwise. The legislature had in their minds, evidently, convictions at different times, and cases in which judgment might be pronounced upon one conviction, before others were had; that is, convictions upon independent trials, on distinct indictments at the same terms of the court, or before sentence should be pronounced upon either. It is to such cases, and such only, that the statute has hitherto been deemed applicable. It cannot be regarded as authority for the procedure in this case, and as changing the law, and if it was so intended, the courts have been very dilatory in ascertaining its scope and effect. The revisers explain the reason for recommending its adoption, and it is merely to guard against possible omissions in the form of sentence usually at that time pronounced in the class of cases mentioned. (5 R. S. [Edmonds’ ed.], 560.) Prece *576 dents for the practice, provided for by the statute thus understood, have been very familiar in this State, but I am not aware that there were or are any for the practice of several judgments, each for the extreme penalty of the law for each of several offences, charged in the same indictment, and upon a single conviction. What is popularly known as the Tichborne Case is claimed to be a direct authority for the conviction and sentences in the case at bar. The prisoner was convicted, upon a trial before Lord Ch. J. Cookburn and his associates, of two distinct acts of perjury, upon separate counts in an indictment, and sentenced' upon each to transportation for the term of seven years, as for disconnected offences, and it is said that the time named is the extreme limit of punishment upon a single conviction for the crime charged. But if it be so, then there was a conviction for two offences, which in this State would be felonies, on the same trial, which is not permissible with us. The decision cannot be regarded as authoritative evidence of the law with us. It is enough to say that no question appears to have been made to the judgment, and whether it is as authorized by some statute, we do not know. Be that as it may, the judgment has not received the deliberate sanction of any court in bane, and has not ripened into a precedent, even in England. It is, at most, but evidence of what the common law is, as now administered in that country, but no evidence as to what it was on the 19th of April, 1775. The practice of uniting several counts in an indictment is a departure from the ancient practice. Lord Denman says, in O'Connell v. Queen (11 Cl. & Fin., 375), that in old times the indictment consisted of a single count, and it may be assumed that this is true. In the words of eminent counsel in a brief in another case, now before me, this “ device of inserting many counts to avoid a variance did not change the law governing at the trial.”
There is no -objection to stating the same offence in as many different ways as may be deemed expedient. It cannot mislead the accused, or embarrass him in his defence, or *577 expose him to accumulated punishments. But the rule, as now recognized, extends further than this, and different misdemeanors may, it is said, and with a show of authority, be joined in the same indictment, and tried at the same time. This change in the administration of the criminal law, affecting, substantially, the .rights of persons accused of crime, rests mainly for its sanction upon the more modern practice of the courts, and the extent of the change thus made in the law can only be certainly known by a reference to the cases in which the questions have been adjudicated, and ascertaining the principles upon which they rest. If there could be but one punishment, or punishment as for a single misdemeanor, irrespective of the number of offences proved, and of which he should be convicted by the verdict of the jury,' although he might be embarrassed in his defence, and prejudiced with the jury, the court could possibly see that no great harm could come to the accused by a joinder of offences. If the rule has this limit, then there is reason for the limitation, as found in the books, that to authorize a joinder of different offences, they must be of the same grade, and require the same judgment. If judgment may be distributive and cumulative, it is difficult to see why there should be an identity as to their character and extent of punishment. Statutes have been necessary to permit offences of different degrees, and requiring different punishments, although relating to the same subject-matter, to be joined. (1 Arch. Cr. Pr. and Pl., 94 ; Kane v. People, 8 Wend., 203 ; People v. Wright, 9 id., 193.) The adjudications of our own State come far short of warranting distributive or cumulative punishments upon distinct counts, and for different offences.
The first case to which we are referred is Kane v. People (supra). The plaintiff in error was indicted for non-performance of his duties as a director of' a turnpike company. The indictment contained two counts, and there was a general verdict of guilty, and a fine imposed of $200. Upon error the first count was held defective, but the verdict and judgment were applied to the second count, and the judgment *578 affirmed. It is true the chancellor says obiter, that if a distinct punishment had been inflicted for the offence charged 1 in each, the judgement would only have been reversed as to the first count. This, at most, is but an intimation oí the opinion of the chancellor, that separate judgments might have been given on each count, but. it is not evidence that the law authorized it; and there is no intimation that the court could have done more than distribute the full measure of punishment prescribed for a single misdemeanor between the offences charged in the two counts.
People v. Rynders (12 Wend., 425), was an indictment charging the prisoner, in different counts, with making, forging and counterfeiting, and uttering and publishing as true, a check on a bank, and the conviction was of the forgery. The court merely held there was no misjoinder of counts, and that the prosecutor was not bound to ele'ct upon which count he would ask a conviction. People v. Baker (3 Hill, 159), has just as little bearing upon the question now before us, simply holding, that whether a district attorney should elect between counts, charging different felonies, was discretionary with the court, and not the subject of review on writ of error. People v. Costello (1 Den., 83), was an indictment against three persons for attempting to procure an abortion upon one Zulnia Maraehe. In two of the counts the attempt was charged to have been made by administering drugs, and in other two by means of an instrument. On the trial evidence was given implicating all in the use of the instrument, and two in the administering of drugs, and the jury found two guilty on all the counts, and the three on the first and second. The court held that when it appeared that Costello was not implicated in one of the offences, the prosecutor should have been put to his election, and a new trial was ordered. Hodgman v. People (4 Den., 235), decides, that on the trial of an indictment for selling liquor without license, the prosecutor can only give evidence of as many distinct offences as there are counts in the indictment. The indictment contained five counts, and on a general verdict *579 of guilty a fine (a single punishment) was imposed, but for the error in the admission of evidence the conviction was reversed. The case is not authority for cumulative punishment. People v. Gates (13 Wend., 311), was an indictment for obtaining the signature of one John Ludlow to an instrument in writing by false pretences, the same offence being charged in different forms in two distinct counts. The court merely say, in answer to the objection that the prosecutor should have been made to elect between the two counts, that that was in the discretion of the Oourt of General Sessions, and assert generally that a defendant may be tried at the same time for different offences charged in the same indictment, if the offences are of the same grade, and subject to the same punishment.
I have thus, and at greater length than would ordinarily be deemed necessary, referred to the several cases cited from our own reports, and it will be seen that no warrant can be found in any of them, or in any remark, casual or otherwise, by any judge, for cumulative punishments upon a conviction of several offences charged in a single indictment, the aggregate punishment exceeding that prescribed by law, for the grade of offences charged.' The rule, as claimed by implication, calls for a single judgment for all the offences charged in the indictment, and of which the accused is convicted. It requires that the offences joined shall be of the same grade, and be subject to the sainé punishment; that is, not only punishment the same in kind, but the same in degree. This can only be important to the end that a single judgment, equally applicable to each of the offences, may cover all, and a sentence, the maximum of which may be lawfully imposed for each. If several judgments may be given upon a single indictment, upon a conviction for several disconnected offences, and the punishments may be successive and cumulative, there is no good reason why the offences joined should be of the same grade, or subject to the same punishment, for the court might so impose the sentences for the respective offences that each could be fully carried out, without interfering with the *580 others. A prisoner convicted of several misdemeanors, for which different penalties were prescribed, might' be flogged for one, fined for a second, and imprisoned for a third. If the doctrine contended for by the prosecution can be maintained, the qualification of the rule "that the joined offences must be. equal in the law, subject to the same punishment, has no foundation in principle ,and must fall. If, as has been done in some cases, the maximum punishment which the law permits for the grade and character of offences charged, is distributed among the several offences of which the prisoner is convicted, according to the demerits of each, the aggregate punishment not being in excess of that allowed by law for a single offence of the same kind and degree, there would probably be nothing illegal, conceding that a person accused of crime may he tried upon one indictment, for several and distinct offences, committed at different times. Eminent counsel claim, with great plausibility and show of reason, that the rule permitting the trial of a person for several offences at the same time, is not authoritatively established, and that it ought not to be. I cannot do better than to quote liberally from the brief of Mr. O’Conor before referred to, and adopt his language, for the reason that he very clearly and tersely expresses the position and the argument in support of it, and which I deem worthy of consideration. That eminent jurist, after referring to the analogy between civil actions for penalties, and criminal prosecutions, says: “ And accordingly, except under some statute expressly authorizing such a course, it has not been the practice to allow two distinct offences to be tried at the same time, either by indictment or penal action. Besides the confusion and embarrassment in which a trial at one time for many offences would involve the accused, such a practice, if tolerated, would breaks down and utterly obliterate many principles of law that are 'not only well established, but essential to the safety of the citizen. ¡Nothing is better settled than that the evil reputation of the accused shall not be offered to strengthen the proofs against him. That other misdeeds shall not be alleged, proved, or *581 attempted to be proven, is equally well known law. If the public prosecutor, or a common informer in a penal action, could put an unpopular person on trial for every delinquency imputed to him by common fame, such a one, however innocent, might often sink under the weight of unmerited opprobrium. The usage of employing numerous counts to guard against a possible variance between the allegation and the proof, is the sole cause of any misapprehension concerning this matter, which may appear in some few judicial opinions. Because there may be many counts in an indictment or declaration, and each on its face must be for a different offence, it has been hastily assumed that distinct and different transactions, occurring at different times and places, and constituting so many different offences, may be given in evidence on the trial of an indictment, or a penal action. The few cases that are to be found giving an apparent sanction to this notion are not sufficient to establish it.”
The learned counsel, with his usual acumen and discrimination, reviews the cases in a note to the brief, and shows that his position is not without foundation, and I incline to concur with him in opinion. His arguments appear to me unanswerable. The practice of putting a man on trial for distinct offences, at the same time, is fraught with danger to the accused, and can never be done except at great risk of doing injustice. The law is tender of the rights of those accused of crime to the extent of securing to them, by every means, a fair and impartial trial by a jury of the country, and protecting them against a conviction under the forms of law, but without an observance of and adherence to all the forms and rules of law calculated to protect the innocent. But if the practice should be regarded so firmly established that it cannot be reformed except by the legislature, the result of distinct judgments and cumulative punishments does not follow legally, logically, or necessarily. Reference will be made to the reported decisions in England, in which it is claimed the foundation was laid, not only for the joinder of several distinct misdemeanors in one indictment, but for cumulative *582 sentences or punishments. But it is' quite evident that there would probably be no precedents of cumulative punishments, each to the full measure allowed by law, as they were imposed in the case before us. The reason is obvious. In England the punishment for misdemeanors is, as a general rule, discretionary with the court. (1 Russ, on Crimes [4th London ed.], 92; 1 Ch. Cr. Law, 710; 56 Geo. 3, chap. 128 ; 1 Vict., chap. 23.) As the court could in all cases, upon a conviction of one or more misdemeanors pass such judgment, and impose such punishment, as it should deem proper and apportioned to the crime or crimes charged, cumulative sentences, each fully exhausting the statutory power of the court in respect to a single offence, could not be imposed, as there is no such limit; and cases in England within this rule and form of punishment would give no color or support to the present judgment. The doctrine is said to have had its origin in an expression of Lord Mansfield in Rex v. Benfield (2 Bur., 980). In speaking of the decision in Rex v. Clendon (2 Strange, 870), in which it had been held that an assault on two people could not be joined in the same indictment, Lord Mansfield thought this not to be the law, and said : “ Cannot the king call a man to account for a breach of the peace, because he broke two heads instead of one 1” This remark suggested a rule, whether sound or not, which has no possible application to the case at bar, and could not in any sense justify the joinder of distinct offences, committed at different times, in the same indictment. If by a single act a like criminal offence be committed against two or more persons, there may be good reason why they should be join ed. O therwise the guilty party may be twice punished f or what is, in substance, but one offence. Rex v. Wilkes (4 Burr., 2527; S. C., 19 How. St. Trials, 1132), is not an authority for joining distinct offences in one indictment. It is an authority for sentence of imprisonment upon a second conviction, to commence at the termination of an imprisonment upon a prior conviction, to which the practice of this State has conformed, and is now, as we have seen, sanctioned by statute. The *583 report of the case shows that there were two informations for libel, one exhibited in Michaelmas Term, 1764, for a seditious and scandalous publication in the North Briton, and the other exhibited soon thereafter, for an obscene and impious essay on woman. The defendant was convicted of both libels, and was outlawed on each, and was separately sentenced for each. (See 4 Burr., 2527, 2578.)
Gregory v. Reg. (15 Q. B., 974), was error from a conviction upon an information for libel, containing four counts, and the judgment of the court sentencing the prisoner to be imprisoned two months on each of the counts, the imprisonment on each after the first to be computed from the expiration of the imprisonment on the next preceding count. The third count was held defective, and the court adjudged that the imprisonment on the fourth count was not thereby invalidated as commencing in futiiro, but that it was to be computed from the expiration of the imprisonment on the second count, bio other question was raised or decided. Whether the distributive judgment was legal, was not considered, and the aggregate punishment was not in excess of that which might have heen inflicted for a single offence. Wilkes was sentenced to imprisonment for twelve calendar months upon each conviction for a like offence.
In Young v. The King (3 Term R., 98), the same offence was stated differently in three counts, and but one transaction was under investigation upon the trial. Upon a general verdict of guilty a single sentence was passed upon the prisoner. To the objection made on error, that distinct offences were joined in the indictment, Lord Kenyon said, the objection would be well founded, if the legal judgment on each count was different: “ It would be like a misjoinder in civil actions. But in this case the judgment on all the counts is-precisely the same; a misdemeanor is charged in each. Most probably the charges were meant to cover the same facts; but if it were not so, I think they may be joined in the same indictment.” With him the other judges agreed, but Justice Buller states the practice in a way which would prohibit a *584 trial for distinct offences at the same time. He says: “ On the face of the indictment every count imports to be for a different offence, and is charged as at different times. And it does not appear on the record whether the offences are or are not distinct. But if it appears before the defendant has pleaded, or the jury are charged, that he is to be tried for separate offences, it has been the practice of the judges to quash the indictment, lest it would confound the prisoner in his defence, or prejudice him in his challenge of the jury; for he might object to a juryman’s trying one of the offences, though he might have no reason to do so in the other. But these are only matters of discretion.”
The case gives no countenance to the doctrine of cumulative punishments, but by implication is adverse to it.
King v. Roberts (Carthew, 226), merely held the information fatally defective, as top general and not distinctly stating a single offence. Ho other question was before the court, and nothing else .was decided, except "that the judgment should be arrested, because no offence was well and sufficiently stated in the information.
I am unable to discover the applicability of Rex v. Kingston (8 East, 41), or any thing in the arguments of the judges applicable to this case. Nothing was said in disposing of the demurrer there, that has the remotest bearing upon the question before us.
Rex v. Galloway (1 Moody C. C., 234), does not advance the argument of the prosecutor. The prisoners were charged in the first count of the indictment with burglary and larceny ; and in the second count with feloniously receiving the same goods, knowing them to have been stolen. They were found guilty on the second count only. The legality of the conviction was submitted by the recorder to the judges, and they were unanimously of opinion that the charges might legally be joined, and the conviction was affirmed; but they were equally divided whether the prosecutor should have been put to his election, “ and thereupon they all agreed that *585 directions should he given to the respective clerks of Assize, not to put both charges in the same indictment.”
King v. Johnson (3 M. & S., 539), is authority for joining in an indictment a count for embezzlement of bank notes under a statute of the realm, with a count for larceny of the' same notes; and this, I infer, was by reason of the peculiar phraseology of the statute against embezzlement, which declared that the offender should be deemed to have feloniously stolen them, constituting the offence a felony the same' as larceny.
Rex v. Jones (2 Camp., 131), is a nisi prius decision. The prisoner was indicted for frauds committed by him as a commissary-general, and the question was whether the prosecutor could give evidence of part of the sums which the defendant had illegally obtained under one count, and of the residue under another, and it was held he could. Lord Ellenborough says: “ I see not the slightest objection to evidence of various acts of fraud committed by the defendant in his office of commissary-general, though charged under different counts, as distinct and substantive misdemeanors.”
It is quite evident that convictions and separate punishments for distinct offences, were not in the mind of the counsel or the judge. It is authority for the admission of proof of distinct acts, charged in different counts to prove a single crime, to wit, fraud and peculation in office.
We are referred to the responses of the judges of England to certain questions propounded them by the House of Lords, in the case of O’Connell, reported 11 Clark & Finnelly, 155-426. The verdict in that case was general upon all the counts of the indictment, and a like general judgment passed against the accused upon the verdict, without discrimination, and as one judgment. Some of the counts were bad, and the judgment was reversed for that reason. The contention was, whether the verdict and judgment could be applied to the good counts, and thus sustained. The learned judges discuss sei'iatim, and at great length, the practice in trials of indictments for felonies and misdemeanors, and the rule as to *586 joinder of counts for distinct offences on the two classes of indictments, but still nothing was definitely determined in the judgment of the court, or can be gathered from the concurrent opinions of the judges, that will aid us in passing upon the question presented by this record. It would be difficult to deduce from the opinions collectively, or that of any single judge, that, when the punishment for a specific offence is limited by statute, and not by the discretion of the court, and a conviction is had under an indictment consisting of several counts of several offences, distinct and distributive sentences could be imposed for the different convictions under the respective counts, which would aggregate a punishment in excess of that prescribed and limited by statute for a single offence; that is, that the several punishments combined could be in excess of that which could, pursuant to statute, be imposed upon a conviction under any one of the counts. The real question considered, and in respect to which these opinions must be read and interpreted, was whether the verdict and judgment could be applied to the good counts, and thus sustained. There was clearly no excessive punishment over that which might have been inflicted upon a single conviction under any one of the counts. It may be conceded that expressions are used by some of the judges, authorizing an inference that the punishment, in the aggregate, upon several counts, might be in excess of that which would, in the discretion of the court, not which could by law, be inflicted upon a single count, or for a single offence. But it is not so said in terms, and certainly is not, and could not, have been so decided; and the judges were not called upon to, and did not, answer any interrogatory which would resolve that question.
If the rule prevails, as is claimed in support of the judgment, it may and must have effect in all courts of criminal jurisdiction, whether general or limited; and a Court of Special Sessions, held by a single j ustice of the peace, may try an individual for any number of misdemeanors of the same grade, of which the court has cognizance, at the same *587 time and upon a single complaint, and upon a conviction impose successive and cumulative sentences of imprisonment and fine, to the full extent of the law for each offence. For the rule, if it exists, does not grow out of the character of the court, hut is a part of the law of the land, of general application. It would follow that, upon the result of a single trial, a justice of the peace sitting as a Court of Special Sessions, may mulct the convicted party in separate penalties of twenty-five dollars each, to the extent of his property, and imprison him from six months to six months, ad libitum. Regina v. Cutbush (10 Cox’s Or. Cas., 489), is adverse to this logical sequence of the rule claimed in' support of the convictions in the case before us. One Paine was convicted, under the vagrant act (5 Geo. 4, c. 83), upon four separate informations, and sentenced upon three of the convictions to be imprisoned at hard labor for three calendar months, and upon the fourth conviction to a like imprisonment, to commence at the expiration of the first three calendar months’ imprisonment. Upon an application for a writ of habeas corpus, on a rule to show cause, the cumulative sentences were sustained upon what Lord Cockbubn, C. J., terms, “ by some degree of technical straining ” of the words of a statute (Vict. 11, 12, c. 43). But for the statute, the prisoner would have been discharged for the invalidity of the convictions and sentences. This is very good evidence that the common law, as administered in England, does not authorize several convictions and cumulative sentences, as in the present case; and that the party illegally imprisoned under sentences unauthorized by law, can have relief by habeas corpus.
Congress has thought it necessary to provide, by statute, for the joinder of several charges against the same person for the same act or transaction, or for two or more acts or transactions of the same class of crimes or offences in one indictment in several counts, but no provision is made for several judgments on one record. (10 U. S. Stat. at Large, 162; U. S. Rev. Stat., § 1024.)
*588 We have an authoritative exposition of the statute from Judge Helsoit, late associate justice of the Supreme Court of the United States; a judge of long and varied experience in the courts of this State and of the United States. Upon the conviction of one Albro, in the Circuit .Court of the United States, for several distinct offences united in a .single indictment, under the act of Congress referred to, the court was moved, in behalf of the government, for separate sentences and distinct punishments for the several offences of which the prisoner had been convicted. The court, holding the application under advisement until the succeeding term, denied the application, and gave a single judgment as for one offence. It was held, Judge Helson announcing the result of the deliberation of himself and his associate, Judge Hall, that the act did not change the common law as it existed in the State of Hew York and was administered by the United States courts, sitting in the State, and that the government was not entitled to a judgment upon a conviction of a prisoner of several offences under one indictment containing distinct counts, except as for a single offence. This is very satisfactory evidence, not only of the true rule of the common law, but that the practice of imposing cumulative sentences in such a case was unknown, and during the fifty years of the judicial life of that eminent judge, he had never known or heard of the exercise of such a power. The case goes far to answer the argument in favor of cumulative sentences derived from the alleged practice of trying several distinct offences at the same time, as it shows that, although such practice be expressly authorized by statute, the power to inflict cumulative sentences does not result and is not allowable. It is proper to state that we are indebted to the district attorney of the United States, prosecuting for the government, for a report of this case.
In Massachusetts there is a similar statute, with the additional provision that successive convictions may be had, and limiting the aggregate term of imprisonment under any one indictment. (Stat. of 1861, chap. 181.) In England various *589 statutes have been enacted from time to time, which would not have been necessary had the rule of the common law been as claimed by the learned counsel for the prosecutor. Without referring to others, it suffices to notice 14 and 15 Victoria, chapter 100, section 16, which makes it lawful to insert several counts in the same indictment against the same person for any number of distinct acts of stealing, not exceeding three, that may have been committed by him against the same person within the space of six months, and to proceed thereon for any or all of them. (See, also, Archbold’s Cr. Pl. and Pr. [16th ed.], pp. 66, 67, 68; Geo. 4, chap. 29, § 48.) One reason assigned by courts in England for permitting the joinder of distinct, misdemeanors, while it is disallowed in felonies, is that upon a trial for felony the accused has the right of peremptory challenges, which is not given on trials for misdemeanors. To allow a joinder of different felonies in the same indictment, would deprive the prisoner of some of the challenges allowed by law, which consequence would not result by a like joinder of misdemeanors. With us the same reason does not exist for distinguishing between felonies and misdemeanors, as peremptory challenges are allowed on trials for both classes of offences. Every person put on trial for any offence not capital, or not punishable with imprisonment in the State prison for ten years or longer, is entitled to five peremptory challenges. (Laws of 1847, chap. 134.) This statute gives one put on trial for a misdemeanor in a Court of Oyer and Terminer the right to challenge peremptorily five of the persons drawn as jurors for such trial. By uniting 220 distinct misdemeanors in one indictment, the accused, upon being arraigned and put on trial, is either entitled to 1,100 peremptory challenges, or is deprived of the right in respect to 219 of the offences for which he is put on trial.
If the distinct offences charged are but fifty-five, or any less number, the proportion of challenges allowed, or of which the accused is deprived, is only changed. The principle is .the same. The joinder of felonies is disallowed in England, because the prisoner’s right of challenge would be reduced, *590 and the same result follows a joinder of misdemeanors here, and the prisoner is deprived of a right given him by law. The reason for the distinction between felonies and misdemeanors in this respect in England would forbid the joinder of distinct misdemeanors in the same indictment in this State and under our statutes.
It may be added that prior to 1847 the right of peremptory challenges on trials for misdemeanors was not allowed in this State, and hence the dicta apparently contradicting the practice found in our reports prior to that time, may well have followed the English cases. The necessity of this legislation shows that the true rule of the common law does not countenance the practice and the judgment in the case before us.
I have examined "with some care the cases in the courts of this State and of England to which we have been referred, or which have come under my observation, and I find no authority for holding that the common law, as it existed in England in April, 1775, or as it exists and is administered in this State at this time, permits cumulative sentences to be imposed upon conviction for several distinct misdemeanors, charged in different counts in a single indictment, in the aggregate exceeding the punishment prescribed by law as the extreme limit of punishment for a single misdemeanor. I do not regret this. A proper administration- of the criminal law, as 'well in the public interest as for the protection of those accused of crime, requires a different rule'. The power of the court was exhausted by one sentence to imprisonment for one year, and the payment of a fine of $250; or if several judgments can be pronounced by a sentence, the same in the aggregate, distributing such punishment and apportioning it to the convictions upon the several counts, according to the demerits of the offences charged in each, each and every of the judgments and sentences, in excess of that limit,-was eorarn non judioe. A judgment in the form and to the extent allowed by law once pronounced, the power of the court became fundus offioio, in respect to that prosecution *591 and the indictment, except to see that the judgment was executed. There was no longer any record or verdict upon which the court could act. The jurisdiction over the person of the condemned was exhausted, and as if no prosecution had ever been instituted against him. The purposes of the prosecution and of the indictment had been accomplished. If the punishment for the offence is fixed by statute, a judgment in excess of the statutory limit is void for the excess, as we have seen by adjudged cases, supra.
A party held only by virtue of judgments thus pronounced, and therefore void for want of jurisdiction, or by reason of the excess of jurisdiction, is not put to his writ of error, but may be released by habeas corpus. It will not answer to say that a court having power to give a particular judgment can give any judgment, and that a judgment not authorized by law, and contrary to law, is merely voidable and not void, and must be corrected by error. This would be trifling with the law, the liberty of the citizen, and the protection thrown .about his person by the bill of rights and the Constitution, .and creating a judicial despotism. It would be to defeat justice, nullify the writ of habeas corpus by the merest technicality, and the most artificial process of reasoning.
There may be, and probably is, a distinction between cases where the punishment is discretionary, as in England in most cases of misdemeanor, and those in which there is a limit fixed by statute, as in this State. Ho court can give a judgment valid for any purpose not authorized by law. A prisoner condemned for grand larceny, for which the statutory punishment is imprisonment in the State prison for a term not exceeding five years, and who is sentenced for ten years, is not, after the expiration of the first five years, held by “ due process of law,” or the “judgment of a court of competent jurisdiction.” Ho court is or can be competent to pronounce a sentence and give j udgment in open and palpable violation of a positive statute, and a judgment thus given is simply void.
With us all punishments are prescribed by statute as well *592 as to character as extent, and a sentence not conformable to law as not warranted by statute, or which is in excess of the legal punishment, is ultra vires, and like every other act, whether judicial or ministerial, done without legal authority, is void. A sentence to imprisonment in the State prison for a misdemeanor would be void, as would a sentence to imprisonment, when only a fine was the statutory penalty. A fine of $1,000 for a misdemeanor, unauthorized by law, would not protect an officer in the execution of process for its collection of the property of the condemned, or by detaining filie person until the fine should be paid. If a court having jurisdiction of the person of the accused, and of the offence with which he is charged, may impose any sentence other than the legal statutory judgment, and deny the aggrieved party all relief except upon writ of error, it is but a judicial suspension of the writ of habeas corpus. That writ is alike a protection against encroachments upon the liberty of the citizen by the unauthorized acts of courts and judges, as against any mere arbitrary arrest.
The indictment, in this case, is an anomaly, and is probably without precedent, but it may have been justified by the peculiar circumstances of the case. But if a statute was necessary in England to the joinder of three or four offences in one indictment, in several counts, and to proceed thereon in respect to any or all of them, it can hardly be claimed that the common law allows 200 separate offences to be charged, and a trial and conviction and separate punishments for fifty distinct offences. Ho precedent has been found for the practice. The justification is to be found, probably, in the fact that great wrongs had been perpetrated, and the punishment as for a single misdemeanor was deemed entirely inadequate to the offence, and the public mind was greatly excited, and called for what would be thought an approximate vindication of the law, and a somewhat appropriate punishment for the offender. I would not be thought to differ with the trial court in respect to the character of the offence,- or of the inadequacy of the statutory punishment upon a single con *593 viction. The remedy was by several indictments, if the offences were distinct. But courts can only administer the laws as they find them, and it is far better that the most guilty should escape, than that the law should be judicially disregarded or violated. A greater public wrong would be committed, one more lasting in its injurious effects, and dangerous to civil liberty and the sacredness of the law, by punishing a man against and without law, but under color of law and a judicial proceeding, than can result from the escape of the greatest offender, or the commission of the highest individual crimes against law.
Neither the cause of justice or of true reform can be advanced by illegal and void acts, or doubtful experiments by courts of justice, in any form, or to any extent. From some expressions of judges, and the remarks of text-writers, there was some color for the idea that several distinct offences could be tried at the same time. But there was no real or true warrant in this State for several and distinct judgments upon a single indictment in the law, and for that reason the prisoner should have been discharged upon the expiration of the imprisonment for one year and the payment of a fine of $250.
The judgment and orders of the Supreme Court and of the Oyer and Terminer must be reversed, and the prisoner dis-discharged.
Rapallo, J.
The question submitted to us in this case is of more than ordinary importance. Its decision will result not merely in determining the extent of the punishment of the particular prisoner now before us, but either in establishing in this State a rule of procedure in criminal cases which will most materially affect every individual who may be hereafter charged with offences of a grade inferior to felony, or in rejecting the rule claimed by the prosecution as not founded in sound legal principle or consistent with our system of criminal jurisprudence. For this reason, we have permitted an unusually extended discussion of the question *594 at our bar, during which we have heard the views of eminent counsel on both sides, and it may be assumed, from the great research displayed in their briefs, that we have been furnished with all the authorities in this State, in England, and in the several States of the Union which, in their judgment, at least, could throw light upon the subject. W"e have also retained the case under advisement more than the usual time, during which we have given a careful consideration to the authorities cited. It is not my purpose now to review those authorities. Such of them as were mostly relied upon on the argument have been referred to and analyzed in the opinion of my learned brother, Allen, J. I propose simply to state the leading reasons which, after full reflection upon the subject, I deem controlling, and "which determine me to concur in his conclusions.
In the decision of so grave a question, the consideration whether the punishment inflicted in the particular case is more or less than was justly merited for the offences proved, has no legitimate place. It is the province of courts to declare the law as they find it to be, and adjudge cases accordingly; not to change or strain the law to make it fit any particular case.
The main question now presented for decision is, whether several separate and distinct offences, each amounting to a misdemeanor, upon which an indictment could be framed, may be charged in one indictment in separate counts, and the prisoner put upon his trial for all the alleged offences at the same time, before the sazne jury; and, in case the jury render a general verdict of guilty on all the counts, or a verdict of guilty on various specified counts, whether the court has power to pronounce a separate sentence on each count upon which the prisoner is found guilty, and thus aggregate sentences on a single indictznent and tz'ial to an extent far in excess of the maxiznuzn punishment prescribed by statute for the grade of offence for which the prisoner has been indicted and tried.
The bare statement of the question suggests to every mind *595 accustomed to reflect upon such subjects, the enormous injustice and oppression which might result from the adoption of the rule which an affirmative answer to this' question would establish, and discloses how effectually such a rule of procedure would obliterate many of the most valuable safeguards which the law has thrown around the trial of persons accused of crime. Laws are framed not merely to secure the punishment of those who are justly accused, but to afford a fair trial to all and guard against convictions being obtained through improper means or influences. The law, therefore, furnishes, as far as possible, to every defendant, the means of knowing precisely of what he is accused, of securing an impartial jury, and all reasonable opportunity for presenting his defence; and it prohibits the introduction against him of any evidence not bearing upon the question of his guilt of the particular crime charged, and carefully excludes evidence which merely tends to create prejudice against him by showing that he is a person of bad character, or guilty of crimes other than that for which he is upon trial. The generally accepted and recognized principle is, that a man shall be tried for only one crime at a time, and convicted only upon evidence of the commission of that crime, and not upon proof of other crimes which show him to be a fit subject for punishment. If it were proposed at a Court of Sessions or Oyer and Terminer, at which a prisoner was arraigned for trial upon fifty separate indictments for as many different offences, to try all the indictments at the same time and before the same jury, the common sense of every layman, as well as lawyer, would revolt at the proposition ; and yet it is claimed that the same result can be accomplished, in cases of misdemeanors, by uniting all the charges in the same indictment. The evils are the same in both cases. Evidence of each misdemeanor would naturally prejudice the jury against the prisoner in determining upon his guilt or innocence as to each of the others. Evidence which would be legally inadmissible as to some of them, would be necessarily admitted if competent-as to some other. The prisoner might, himself, *596 be obliged to introduce evidence to exculpate himself from some of the charges, which would have a bearing prejudicial to him (though, perhaps, illegitimately so) on the trial of the others. The result at which the law aims, of making each criminal charge depend upon its own merits would be frustrated.
If the rule claimed by the prosecution is sound, it is equally applicable, as stated in the opinion of my toother Allen, J., to trials before inferior courts or magistrates, upon complaints for petty offences for which they have jurisdiction to impose only a short term of imprisonment. If a vast number of such offences can be united in one indictment and separately punished, they can, with equal propriety, be united in one complaint and tried together, and the result would follow that a magistrate or Court of Special Sessions, to whom the legislature liad confided the power of trying only such offences as are punishable by fine or imprisonment not exceeding one year, could upon a single trial sentence a prisoner for a term exceeding the possible duration of his life.
It is clear that the rule claimed is subject to very serious objections, and has little, if any thing, to recommend it, and could only be made useful by being carefully guarded by statutory restrictions. If the public prosecutor finds that several distinct misdemeanors have been committed, and he desires the infliction of a separate punishment for each, he can, under existing law, obtain separate indictments and try each upon its own merits; the prisoner will then be enabled to avail himself of his right of challenging jurors on the trial of each indictment, and the evidence of the prosecution and of the defence will be confined to the matter charged in that indictment, and the punishment proportioned, within legal limits, to the gravity of the offence proved, and even if under an indictment containing several counts, the proofs should disclose that the offences were-distinct and might have been the subject of separate indictments, the court can compel the public prosecutor, either during the course of the trial or at its close, to elect upon which count he claims a conviction. *597 But the rule claimed that the prisoner can be tried at the same time on, as in this casé, over fifty different charges, and in case of conviction, punished separately on each, should not, in my judgment, be adopted, unless it can be shown to have been established by authority, to which the court, on the principle of stare decisis, ought to yield its own convictions of right.
In searching for authority for such a course of procedure, we naturally turn in the first instance to the statutes of our own State. After a diligent search we find there nothing adapted to the enforcement of such a practice or recognizing its existence; on the contrary, all the provisions in relation to indictments, trials and punishment for crimes and misdemeanors, seem to contemplate but a single conviction and sentence on every indictment..
We next turn to the reports of the adjudicated cases in our own courts. From the organization of the judiciary of this State to the present time, notwithstanding the industrious researches of counsel and our own, we are not referred to, nor do we find, a single reported case in which cumulative sentences have been imposed on a conviction of several offences under one indictment, nor in which the power to inflict such sentences has been adjudged. The dicta on this subject, found in some reported opinions, are explained in the opinion of my learned associate, Allen, J.
We then appeal to the experience of the members of our own court, several of whom have presided for a great number of years over courts of criminal jurisdiction in this State, and some exercised the office of public prosecutor. None of them, speaking either from experience or tradition, can cite a case in which such a power has been exercised or sanctioned in this State.
It thus appears, as far as a negative proposition is capable of being established, that there is no authority in this State for the course now attempted to be sustained, although occasions for such a course must have frequently occurred, and that we are called upon to introduce a new doctrine into our *598 jurisprudence contrary to our previous practice, and as I think the majority, if not all, of my brethren will concur with me in saying, contrary to our ideas of order and justice in the administration of criminal law.
Statutes of the United States, and of some of our sister States, and of England, have been referred to, which, in certain cases, and under restrictions, allow the joinder of several criminal charges in one indictment. But these statutes rather disprove than prove the right at common law to pursue that course; else why the necessity of enacting them ?
How, what is the authority upon which we are called upon to introduce into this State this new practice. It is to-be found only in the opinions of judges of courts in England, of a date later than that up to which, by our Constitution, we adopted the common law of England; and, unless in a single very recent case, in which the question was not raised or discussed, or any reason given (the Tichborne case), no-practical application of the rule appears from any of the cases cited to have been made, cumulating sentences on separate counts to an extent greater in the aggregate than-could have been inflicted upon either of the counts alone. Upon the strength of these opinions, elementary writers have stated it to be the law, that various misdemeanors may be joined in one indictment under several counts, and tried at the same time, and separate convictions had, although it is conceded that, where the offence amounts to a felony, there can be but one conviction and one sentence under one indictment. The same statement has been repeated in some American cases in other States, but as these are few, and those to be found conflict with each other, and none of them are authority here, it is not useful to go into them in detail.
It may not be out of place, however, to remark, in passing, that in Massachusetts, after the practice had obtained in some of the counties, founded on local custom, to unite and try several distinct offences under one indictment, the legislature of that State enacted a statute, providing that “ two or more counts, describing different offences, may be set forth in the *599 same complaint or indictment depending upon the same facts or transactions, provided that the different counts therein are different descriptions of the same act.” (General Statutes of 1861, chap. 181.) This is a clear legislative condemnation of the theory of cumulative convictions and punishments under one indictment, as there can be but one punishment for the same act. And even in excise cases, which are a class sui generis, a statute of that State provides “ that several parties and offences may be included in the same complaint, and several offences tried at the same time and successive convictions had; but the whole aggregate term of imprisonment under any one complaint or indictment, or at any one term of the court, for such violation, shall not exceed one year.” The case cited from Pennsylvania (Commonwealth v. Birdsall, 69 Penn., 482), if deciding what is claimed by the prosecution, is in conflict with the settled law, as well of England as of this State, as it would sanction. the union of several felonies. We have been referred to no other precedents in support of the doctrine claimed, which call for special observation, while die general current of judicial sentiment in other States is decidedly adverse to it.
Before we adopt the doctrine that several misdemeanors may be joined, a doctrine of comparatively modern growth, let us see on what ground the distinction is made between felonies and misdejneanors; whether there is any distinction in principle, so far as this inquiry is concerned, and whether the distinctions assumed to exist under the law of England, even if sound there, have any application under the laws of this State. A very brief examination will show that the reasons assigned in England for this distinction, even if sound there, are totally inapplicable here. In the first place, it is material to observe that the punishment for misdemeanors in England is, or was at the time when this doctrine was enunciated there, in the generality of cases, discretionary with the court; the court had unlimited power to sentence for any term, however long. The term was not, as here, defined and limited by statute, consequently, although a prisoner might *600 be sentenced to various successive terms of imprisonment on different counts in the same indictment, it could not be said that the aggregate of these terms was greater than the court had power to impose, if it chose to do so, on either one of the counts.
But the main reasons assigned in the English cases for the distinction, in this respect, between felonies and misdemeanors, are these : The judges say that a prisoner cannot be tried for various distinct felonies under one indictment, because it would embarrass him in his defence, confound the jury and confound the prisoner, and prejudice him in his challenges of the jury; the law of England allowing to the prisoner a certain number of peremptory challenges in cases of felony. But they say that this objection to the joinder of several offences in one indictment does not exist in cases of misdemeanor, because in those cases, by the law of England, the prisoner has no right of peremptory challenge; hence, although different felonies cannot be tried under the same indictment, different misdemeanors can.
It is not easy to perceive why uniting several charges of different offences in the same indictment is not as likely to embarrass the prisoner in his defence, and confound him and the jury, in cases of misdemeanor, as in cases of felony. But, perhaps, the English judges, in view of the entire control which they could, in general, exercise over the conduct of the trial, and the amount of punishment to be inflicted in cases of misdemeanors, considered that it was in their power to adjust any difficulties which might arise in that class of cases, while they could not exercise like powers in cases of felony where the punishment was prescribed by law. Here, the punishment in cases of misdemeanor is limited by statute in all cases. I may not have given a very good explanation of the grounds of the distinction made in England between indictments for misdemeanors and felonies, but, if so, it is owing to the difficulty of finding any better ground for such distinction, so far as confusion on the trial is concerned. The essential difference, however, between the law of this State *601 and that of England, and one which entirely destroys the reason upon which the alleged distinction there depends1, is, that in this State the right of peremptory challenge is secured by statute in cases of misdemeanor, as well as in cases of felony; and the reason assigned in England for not allowing a prisoner to be tried for several felonies- at the same time applies here with equal force to trials for misdemeanors.
Had the charges preferred in the several counts of the indictment, in the present case, constituted felonies, as defined in our statutes, and had the court, on receiving the verdict of the jury convicting the prisoner upon all or any number of the counts, rendered separate sentences upon each, for successive terms of imprisonment, exceeding in the aggregate the maximum which the court was empowered, by statute, to impose for the offence charged in any of the counts, I think it safe to assert that, in respect to the excess, there could be no difference of opinion in this court, at least, as "to the nullity of the sentence in respect to the excess. If, therefore, as I have endeavored to show, it possessed no greater power on conviction upon an indictment for misdemeanors than upon an indictment for felonies, the conclusion is very plain and simple, that so much of the sentence as exceeds the bounds of the maximum term of imprisonment authorized by law for any of the misdemeanors of which the prisoner was convicted, is void for want of power in the court to render it.
A brief reference to some of the statutes in relation to misdemeanors, and to that upon which the prisoner was indicted, may throw some light upon the subject.
The offence for which the prisoner was indicted and tried in this case, was willful neglect of a duty enjoined upon him by law, viz., that of auditing certain liabilities of the county of Hew York, under the act of 1870. Whatever other offences he may have committed, that was the only one for which he could be punished in this prosecution. The statute under which he was indicted reads as follows (2 R. S., 696, § 38): “ When any duty is, or shall be enjoined bylaw upon any *602 public officer, or upon any person holding any public trust or employment, every willful neglect to perform such duty, when no special provision shall have been made for the punishment of such delinquency, shall be a misdemeanor, punishable as herein prescribed.” Section 40 (p. 697), declares the punishment, and provides that “ every person who shall be convicted of any misdemeanor, the punishment of which is not prescribed in this or some other statute, shall be punished by imprisonment in a county jail, not exceeding one year, or by fine not exceeding $250, or by both such fine and imprisonment.” Clearly there is nothing- in this provision which points to more than one conviction or punishment on any one indictment. The indictment in the present case, contained 220 counts, each of which assumes to charge a separate willful neglect of duty — supposing that the matter charged'in each count constituted a separate offence for which the prisoner might have been separately indicted, and tried and punished. Yet when they are all united in one indictment, and trial, we find no satisfactory authority for the rendition of more than one judgment, although the prisoner may have neglected his duty on 220 occasions, and the charge of neglect of duty may have been proved against him on the trial 220 times over; all that the court had power to adjudge, was that he was guilty of a misdemeanor, and should receive the maximum punishment for that offence prescribed by the statute. The very next section of the statute shows cumulative punishment on one trial could not have been dreamed of by the legislature. Section 41 provides that “ the court before whom any person shall be convicted of an offence punishable by imprisonment in a county jail ” (which is this case), “ may sentence such person to imprisonment in "a solitary cell in such jail, if any such be erected, but such imprisonment shall in no case exceed thirty days in the whole.” Here it is seen that the severity of that description of punishment, solitary confinement, is recognized by the legislature, by providing that where it is inflicted the whole imprisonment shall not exceed thirty days, that being treated as *603 equivalent to one year of ordinary imprisonment. Can it be conceived that the legislature intended or supposed that in a case like this 220 offences could be charged, and fifty-five convictions had, each of an offence punishable by imprisonment in a county jail, and fifty-five successive terms of solitary imprisonment, of thirty days each, inflicted — a punishment which writers upon the subject have stated is regarded as more severe, even, than the death penalty, and one which but few prisoners can long survive. That this doctrine of cumulative punishments on one indictment could never have entered the mind of the legislature, is made still more clear by reference to the general provisions relating to misdemeanors. Take one instance: 2 Revised Statutes, section 26, provides that “ Every person who shall by his act or neglect maliciously kill, maim, wound, injure, torture or cruelly treat, any horse, mule, ox, cattle, sheep, or any other animal belonging to himself or another, shall, upon conviction, be adjudged guilty of a misdemeanor.” Suppose one were convicted under one indictment containing 100 counts of ill-treating 100 different sheep; the rule sought to be introduced by the prosecution, if established, would authorize the court to sentence him to 100 years of imprisonment, or 100 terms of thirty days each of solitary confinement. If the power exists to inflict cumulative sentences, such a sentence as is .supposed could not be reviewed by a higher court, for it would be a mere exercise of judicial discretion within legal limits, and not an error of law. On convictions for misdemeanors, which are regarded under our statutes as offences of the lightest grade known to the law, and are triable in the lowest courts, those courts might impose heavier sentences than the highest criminal courts would have power to inflict for the most aggravated felonies. No such incongruity should be imputed to our law.
For the reasons which I have stated, I am of opinion that, upon any indictment for misdemeanor, no matter how many counts it may contain, or whatever may be the form of the verdict, the power of the court to sentence is restricted, as in *604 eases of felony, to the maximum punishment allowed by statute for the highest offence charged in the indictment; and that separate and cumulative punishments can only be secured by separate indictments and trials for each offence. If my brethren concur with me in this conclusion, the right to be relieved from further imprisonment, by means of the writ of habeas corpus, seems to me very plain. That remedy is available to every person illegally detained. The suggestion is made that, under our statute, a party detained “ under a final judgment or decree of any competent tribunal of civil or criminal jurisdiction” is precluded from the benefit of this writ. That objection is, I think, sufficiently answered in the opinion of my learned brother, Allen, J. According to the terms of the statute, the court, under whose final judgment the prisoner is detained, must be not only a court of civil or criminal jurisdiction, but it must be competent. This word can have no operation unless it means competent to render such judgment. The further suggestion that, under the forty-second section of the habeas corpus act, the “ legality or justice” of any judgment or execution cannot be inquired into on habeas corpus, is met by a reference to the section immediately preceding, the forty-first, which expressly declares the right, in proceedings under that writ, to inquire into the question of jurisdiction ; thus showing that the terms “legality and justice,” as used in the forty-second section, were not intended to include questions of jurisdiction or power. If, upon a conviction for a misdemeanor, a prisoner were sentenced to be imprisoned for the statutory term and then hung, and he were detained after the expiration of the legal term for the purpose of carrying the latter part of the sentence into execution, the argument used in support of this objection would maintain that the writ of habeas corpus would not be effectual to liberate him. Yet the writ was decided to be effectual for that purpose by the Court of King’s Bench, in an analogous case, as long ago as 1752, (Rex v. Collyer, Sayer, 44.)
For all these reasons, as well as those stated by my brother
*605 Allen, J., I am of opinion that the power of the court was exhausted when it had imposed the first sentence of one year’s imprisonment and $250 fine; and that it then ceased to be competent to render any further judgment in the case. That term of imprisonment having expired, and the fine paid, the prisoner is entitled to be discharged.
All concur; Miller, J., concurring in result.
Judgment of Supreme Court and order of Oyer and Terminer reversed, and ordered that prisoner be discharged.